In re Vincent R. BENEDICT, Debtor.

Bankruptcy No. 87–2678–BKC–6P7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

June 29, 1988.

Richard Hennings, Tavares, Fla., for debtor.

Peter N. Hill, Orlando, Fla., Trustee.

Gayle Ehrlich, Boston, Mass., for New Woodmere Nursing Home.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the objections of the trustee and New Woodmere Nursing Home, Inc. (Woodmere), a creditor, to the debtor's claim of exemption in certain annuity contracts issued pursuant to the terms of a personal injury settlement agreement in favor of the debtor. An evidentiary hearing on the objections was held on April 27, 1988, and upon the evidence and argument of counsel, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On March 7, 1982, the debtor was involved in a motor vehicle accident in which he suffered severe and incapacitating injuries. The debtor's wife was appointed conservator of his estate and in that capacity filed a negligence action against Zelco Inc. and St. Johnsbury Trucking Company, Inc. (Defendants).

2. In the spring of 1986 the suit was settled prior to trial and the parties entered into a structured Settlement Agreement and an Assignment and Assumption Agreement (collectively referred to as the Agreements).

3. The Settlement Agreement provided for lump-sum payments of $100,000 and periodic payments to be made to both Eileen and Vincent Benedict. The debtor was to receive $3,333.33 per month for the greater of ten years or the duration of his life and Eileen Benedict was to receive the same amount for the greater of thirty years or the duration of her lifetime.

4. Pursuant to the terms of the settlement agreements, the defendants delivered the proceeds of the settlement to Merrill Lynch Settlement Services, Inc. (Merrill Lynch). The Assignment and Assumption Agreement directed Merrill Lynch to purchase annuity contracts in favor of the Benedicts.

5. Merrill Lynch purchased two annuities, one through Transamerica Occidental Life Co. (Transamerica) identifying Vincent Benedict's estate as the beneficiary, and another through First Colony Life Insurance Co. (First Colony) designating Eileen Benedict as the payee. Both annuity contracts listed Merrill Lynch as the owner. It is the proceeds of these annuities which are the subject of this objection.

6. On October 13, 1987, a bankruptcy petition was filed on behalf of Vincent Benedict by his guardian, Eileen Benedict. On the same date a companion bankruptcy case was filed by Eileen Benedict, case number 87–2677–BKC–6P7 (Bkrtcy.M.D. Fla.1987).

7. In both cases identical schedules were filed, the only difference being debtor's Schedule B–2 which reflects ownership interests in the Transamerica annuity contract as opposed to the First Colony contract. In Schedule B–4, the debtor has claimed the proceeds of this policy as exempt.

8. The trustee has filed objections to the debtor's claim of exempt property as to the Benedicts' bank account and as to the annuity contract. New Woodmere has joined in these objections, alleging that the debtor is neither owner or beneficiary of the annuity contract.

## CONCLUSIONS OF LAW

1. The settlement of debtor's personal injury suit involved what is commonly referred to as a "structured settlement agreement." The objective of such an agreement is to provide for periodic annuity payments of personal injury damage awards over an extended period of time as opposed to a single term lump-sum distribution. If properly structured, the proceeds of the annuity contracts are excluded from the recipient's gross income for tax purposes.

To achieve this objective, § 130 of the Internal Revenue Code, Title 26, United States Code, requires that the annuity contracts comply with certain procedural guidelines. First, the rights of the plaintiff to receive the annuity payments must be no greater than the rights of a general creditor of the defendant or the defendant's assignee. Second, the plaintiff may not have any ownership rights in the asset in which the defendant invests to provide these payments. Third, the defendant may not set aside specific assets for the plaintiff's benefit or agree to a lumpsum settlement and then require the defendant to invest the lump sum on the plaintiff's behalf. Finally, the plaintiff must receive the payments through suit or settlement as payments of damages on account of personal injury. *See generally,* Burke, "Structured Settlements Revisited," *Florida Bar Journal,* March 1985, pp. 40–42.

While the agreement in question appears to comply with these requirements, it is not this Court's responsibility to make such a determination. Instead, the issue before the Court is whether an annuity issued pursuant to a structured settlement agreement and § 130 of the Internal Revenue Code may be claimed as exempt under Florida law and the Bankruptcy Code.

2. The initiation of a bankruptcy case creates an estate which is comprised of all of the debtor's property as defined in § 541 of the Bankruptcy Code, including, "... all legal or equitable interests of the debtor in property as of the commencement of the case ...." However, an individual debtor may exempt property from his/her bank-

ruptcy estate by claiming certain exemptions authorized by § 522 of the Bankruptcy Code.

3. Section 522 gives a debtor a choice between two exemption schemes. The debtor may choose the federal exemptions prescribed in subsection (d), or may choose the exemptions to which he is entitled under other federal law and the law of the State of his domicile. HR Rep. No. 95–595, 95th Cong., 1st Sess. 360–61 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

However, under § 522, a state may, by legislation, limit a debtor's right to claim the federal exemptions as an alternative to those provided under state law. The state of Florida has exercised this privilege and has prohibited residents of this state from claiming the federal exemptions set forth in § 522(d) of the Bankruptcy Code. § 222.20, Florida Statutes (1977). In their stead, the Florida legislature has promulgated its own set of exemptions. Article X, Section 4, Florida Constitution and Chapter 222, Florida Statutes.

4. One such exemption privilege is set forth in § 222.14, Florida Statutes. It provides, in relevant part:

> [T]he proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless … the annuity contract was effected for the benefit of such creditor. [Emphasis added).

5. Exemptions under state law rest on considerations of public policy and should be liberally construed in favor of the debtor. *Killian v. Lawson*, 387 So.2d 960, 962 (Fla.1980). With this goal in mind, the Court concludes that the debtor may claim the *proceeds* of the annuity contract as exempt.

6. Florida Statute § 222.14 exempts from legal process the proceeds of annuity contracts issued to citizens or residents of this state. All of the parties have stipulated that the debtor is a Florida resident.

7. Additionally, § 222.14 exempts the proceeds of annuity contracts from attachment, garnishment or legal process in favor of any creditor of the person who is the beneficiary of the annuity contract. The beneficiary need not necessarily be the one named in the annuity contract.

In *In re Ebenger*, 40 B.R. 463 (Bkrtcy.S. D.Fla.1984), the Court defined "beneficiary" in such a manner to include any person with a beneficial interest in the annuity, including the annuitant himself. An "annuitant" is the "recipient of an annuity" or the "one who is entitled to an annuity." *Black's Law Dictionary*, 4th Ed. (1968). In the instant case, the debtor is the annuitant under the Transamerica policy because he is the one entitled to the annuity payments. Under the rationale set forth in *Ebenger*, he is the "beneficiary" of the annuity contract within the meaning of § 222.14, Florida Statutes and thus, the proceeds are exempt.

Even though Merrill Lynch is named as the designated owner under the annuity contracts, it is clear from the settlement agreements that they were purchased for the benefit of the Benedicts. Furthermore, they are the ones who suffered the loss and the ones who need the protection of the statute. As such, the debtor's heirs qualify as third-party beneficiaries under this statute, and the proceeds may be preserved clear of the claims of his creditors.

8. In addition, there is no requirement that the annuity itself be issued to a resident of this state (as the objecting parties suggest). The statute merely requires that the *proceeds* of annuity contracts be issued to residents of this state. Moreover, the Court can find no substantive reason why ownership of the policy would affect the debtor's right to claim the exemption.

9. The fact that the debtor may have a claim against Merrill Lynch for non-payment does not change the result. Ordinarily, all claims, whether legal or equitable, are deemed property of the estate. 11 U.S.C. § 541. However, where the debtor has a right to exempt such property or

claim from the estate, the trustee's right to succeed to that claim must give way.

■ 10. Finally, the Court must address the objectors' argument that the exemption is lost once the proceeds of the annuity contracts are deposited in a bank account. They contend that because the Florida Legislature expressly provided an exemption for wages deposited into bank accounts, § 222.11, Florida Statutes, and failed to do so with regards to annuity proceeds, the exemption is lost once the proceeds are deposited into a bank account.

The Court can find no support for this argument. Instead, courts have generally held that exempt funds deposited into a bank account retain their exempt status. 31 Am.Jur.2d, Exemptions § 109. In the instant case, the debtor's guardian deposited the annuity payments into a checking account. At all times, the monies in the account retained their identity and were properly traced to the annuity proceeds. So long as the funds can be properly traced into the account, and are readily accessible to the debtor, the funds retain their exempt status.

Accordingly, the objections of the trustee and New Woodmere to the debtor's claimed exemption are overruled. The Court will enter a separate order in accordance with these findings.

ORDER OVERRULING OBJECTIONS BY THE TRUSTEE AND NEW WOOD-MERE NURSING HOME, INC. TO EXEMPTIONS OF DEBTOR

Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED as follows:

1. The Trustee's Objection to Debtor's Claim of Exemptions is OVERRULED.

2. New Woodmere Nursing Home, Inc.'s Objection to the Debtor's Claim of Exemptions is OVERRULED.

3. The Debtor's claim of exemptions in the proceeds of the Transamerica Occidental Life Co. annuity contract is ALLOWED.