**In re: Gilbert MART, Debtor.**

**Bankruptcy No. 87–04526–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

July 15, 1988.

See also, Bkrtcy., 90 B.R. 556.

Robert L. Roth, P.A., Miami, Fla., for debtor.

Arthur Halsey Rice, Ira Silver, Miami, Fla., for objectors.

Steve Friedman, Miami, Fla., for William Roemelmeyer, trustee.

Robert L. Jennings, Holland & Knight, Ft. Lauderdale, Fla., Harry D. Lewis, Holland & Knight, Miami, Fla., for Chicago Title Co.

## ORDER ON EXEMPTION (TRUST & ANNUITY)

THOMAS C. BRITTON, Chief Judge.

Seven creditors (CP 29), joined by the trustee (CP 34), and another creditor, Chicago Title (Adv. No. 88–0144, Count 3) have objected to the debtor's claimed exemption of the "Ainickel Irrevocable Trust Annuity". The parties were heard April 28. The objections are overruled.

### The Ainickel Trust

On November 6, 1986 the debtor's daughter-in-law executed in this State and funded with $2,000 an irrevocable, spendthrift trust for the benefit of seven children, nieces and nephews, the Ainickel Trust. The trust will terminate with final distribution to the beneficiaries upon the deaths of the debtor and his wife, who are in their sixties. The trustee is the debtor's daughter. She accepted the trust.

The trust instrument was suggested by and drafted by an attorney engaged by the debtor. The trust was funded by the debtor. The trust itself is not claimed as an exemption by the debtor. If there be any contention before me that the trust is invalid or that its initial funding was a fraudulent transfer voidable under 11 U.S.C. § 548 or under Florida law, incorporated by § 544(b), that contention is unsupported and is rejected.

### The Annuity Agreement

The *next* day, November 7, 1986 the debtor and his wife entered into an Annuity Agreement with their daughter, the Ainickel trustee. In return for the conveyance by the debtor and his wife to the trustee of (a) Ohio real property owned by the debtor, and (b) a $500,000 note payable to the debtor and his wife by a Florida limited partnership, Riverside Shoppes, Ltd., the Ainickel trust agreed to pay stipulated sums at stated intervals to the debtor and his wife or the survivor. The note was secured by a mortgage on the partnership real property. The value of the two assets was estimated to be $850,000.

Eleven months later, the Annuity Agreement was modified in two respects: to reduce the estimated value of the two assets transferred to the trust to $350,000 and to reduce the stipulated payments to comply with actuarial and IRS standards. The Annuity is presently paying $3,000 monthly. The modification corrected an error in the earlier Agreement. The Riverside mortgage had been released at the request of a bank.

The Annuity, like the trust, was suggested by and drafted by an attorney engaged by the debtor for that purpose, as an estate planning instrument. The estate planning had been prompted by a talk given by the attorney at the debtor's synagogue.

### Fla.Stat. § 222.14

This statute provides, effective July 1, 1978, in pertinent part:

> "the proceeds of annuity contracts issued to citizens or residents of the state, *upon whatever form,* shall not *in any case* be liable to attachment, garnishment or legal process in favor of any creditor ... of the person who is the beneficiary of such annuity contract, unless the ... annuity contract was effected for the benefit of such creditor." (Emphasis added.)

■ There is no basis in this statute to restrict the exemption to annuities provided by completely unrelated, public entities. It must be liberally construed in favor of the debtor. As stated in *Killian v. Lawson,* 387 So.2d 960, 962 (Fla.1980):

> "Exemption statutes ... should be liberally construed in favor of a debtor so that he and his family will not become public charges."

### The Objectors' Contention

The only argument presented by the several objectors is that of counsel for the seven creditors. (CP 41a) His argument is summarized in the following two statements:

> "In this case, the Debtor has exercised absolute control over the income stream which he seeks to exempt. It lacks the characteristic of certainty traditionally attached to Annuity payments. The Debtor hired the lawyer, reviewed the Trust and approved its form and on the next day transferred his property for the alleged Annuity. ...
>
> "If MART's income stream from the transfer of this property is an Annuity, any debtor can go to his cousin and give him all of his property in return for a promised stream of income. That debtor need only pull out his big rubber stamp with the word Annuity on it and label the agreement from his cousin to pay the money."

I agree that this statutory exemption, perhaps like all exemptions, invites abuse. I also agree that the debtor's relationship with the Ainickel trustee, her evident willingness to accept her father's proposals, and the fact that this is a completely private arrangement are grounds for careful scrutiny.

■ I reject the argument and the objections, however, because, (1) as has already been noted, the statutory exemption is not restricted to annuities provided by completely unrelated, public entities, and (2) I find no intent to defraud creditors in this debtor's conversion of his non-exempt assets to exempt assets through the establishment of this annuity contract.

### Absence of Fraud

The annuity was established 13 months before bankruptcy. The funding of the annuity cannot, therefore, be avoided as a fraudulent transfer under 11 U.S.C. § 548, which is restricted to transfers within the year preceding bankruptcy.

The asset may be recovered, if at all, only through § 544(b) which invokes State law. The applicable Florida statute, *Fla. Stat.* § 726.01,[1] contains no specific time limitation, but does require proof of actual fraudulent intent.

In *In re Gefen,* 35 B.R. 368 (Bankr.S.D. Fla.1984), this court, through Judge Weaver, held that a debtor's conversion of a non-exempt I.R.A. to an annuity with an actual intent to defraud creditors was a fraudulent transfer voidable under the Florida statute.[2] I would not hesitate to reach the same conclusion under those circumstances.

The facts before me, however, do not support a finding of fraudulent intent here.

The debtor's independent CPA has verified that when the Annuity was created

---

1. This statute was repealed and replaced by the U.L.A. Uniform Fraudulent Transfers Act effective January 1, 1988 with application solely, however, to "transaction entered into and events occurring after that date". Laws 1987, c. 87–79.

2. The conversion occurred 17 months before bankruptcy, but one month after a $69,000 judgment was entered against him and four days after he was served with process in aid of execution.

and funded, this debtor was solvent and no suits were pending. The debtor then owned other property worth about $4 million more than his then liabilities. This Annuity involved less than 10% of his net assets and there was no move to convert or conceal any other assets. The asset used, the Ohio property, had been owned by the debtor for many years.

His financial downfall, which ultimately led to bankruptcy in December 1987, was prompted by defalcations of an attorney/son, not the failure of the debtor's business ventures, and the debtor did not anticipate insolvency nor contemplate bankruptcy when the annuity was established.

Most significantly, as has been noted, the attorney who established both the trust and the Annuity has made it clear that both were proposed *by him, not the debtor,* and were designed solely for estate planning purposes and to minimize potential estate taxes, not to exempt assets from creditors' claims. The attorney, an estate planning specialist, is completely unrelated to the debtor. He saw no indication of any intent on the debtor's part to shield assets from creditors.

### *Debtor's Control*

The objectors rely upon *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985) and similar holdings that an attempted spend-thrift trust is not exempt, because:

"such a trust fails where the [debtor] beneficiary exercises 'absolute dominion' over the property of the trust."

In that case, the control of the debtor/beneficiary was described by the Court:

"While appellant as beneficiary cannot assign or alienate his interest in the trusts, he as sole officer and director of the settlor P.A. can amend or terminate the trusts. That appellant can only amend or terminate the pension plans in his capacity as agent for the P.A. is not important here. He alone enjoys the authority to act, whether as an agent of the settlor or in his own right as trustee and beneficiary." Id. at 1490.

I find that this debtor does not exercise "complete dominion" over either the Ain-ickel Trust, which is irrevocable, or the Annuity Agreement. Both are controlled by his adult daughter, who presumably has as much incentive to preserve the interests of her children as beneficiaries of the trust, as those of her parents as beneficiaries of the Annuity Agreement. She cannot favor one except at the expense of the other.