**In re Kathleen G. PIZZI, Debtor.**

**Bankruptcy No. 92–30972–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

April 12, 1993.

Order Denying Reconsideration
May 6, 1993.

Daniel L. Bakst, W. Palm Beach, FL, Trustee and counsel for Trustee.

Kathleen G. Pizzi, pro se.

Stuart A. Young, West Palm Beach, FL, for debtor.

C. Craig Eller, Gunster, Yoakley & Stewart, P.A., West Palm Beach, FL, for Connecticut Nat. Bank.

Joel L. Tabas, Miami, FL, for Bank of New York (Delaware).

## MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

April 19, 1985 was a good day for Kathleen Pizzi. The Connecticut State Lottery drew the numbers on her ticket converting her one dollar purchase into a prize worth $3,202,624.20. Despite her good fortune, Ms. Pizzi incurred substantial debt in the years that followed, ultimately resulting in the filing of this Chapter 7 case.

Ms. Pizzi seeks to discharge her substantial debts without giving up her right to receive twelve more annual payments of $128,105.17 from Connecticut to complete the twenty (20) year payout of her prize. She claims that this income stream is an annuity contract protected from creditors under Florida law and thus an exempt asset in this bankruptcy case. Her exemption claim is challenged by the Trustee and two bank creditors. The Court sustains the objections. The unpaid lottery winnings are nonexempt assets which must be liquidated to pay creditors.

### PROCEDURAL BACKGROUND AND SUMMARY OF ARGUMENT

The debtor filed this Chapter 7 case on March 24, 1992. Timely objections to the Debtor's claim of exemptions were filed by Daniel Bakst, the Chapter 7 Trustee ("Trustee"), the Bank of New York (Delaware) ("Bank of New York") and Connecticut National Bank ("Connecticut National"). The Court heard argument on the objections on June 30, 1992 and August 25, 1992. The Debtor, the banks and the Trustee have each filed memoranda and stipulated to the material facts.

The Debtor contends that the prize money she receives yearly from the State of Connecticut in the net amount of $128,105.17 is exempt under Florida law as an annuity since the state pays her through an annuity purchased from Metropolitan Life Insurance Company ("Met Life"). The Trustee and objecting creditors argue that the exemption does not apply since the Debtor is not the beneficiary of the annuity and receives her money directly from the State of Connecticut. They also argue that

the money is strictly a prize which is not and should not be subject to the exempt status of an annuity. The Court has reviewed the record including the stipulated facts and documents, the memoranda and applicable case law, and finds that the Debtor is not the beneficiary under an annuity contract exempt under Florida law. As a result, the objections filed by the Trustee and the creditor banks are sustained.

## FACTS

Based upon the stipulation of the parties and the documents in the record, the relevant facts are as follows:

1. Kathleen G. Pizzi is an individual debtor in bankruptcy.

2. On April 19, 1985, Kathleen G. Pizzi was the winner of the Connecticut State Lottery in the gross amount of $3,202,-624.20.

3. The lottery winnings had a present money value of $1,003,747.79 after payment of her first of twenty installments.

4. The prize was payable in twenty (20) annual installments each in the amount of $160,131.21. After withholding tax, the net payment to Ms. Pizzi each year is $128,-105.17.

5. On or about April 19, 1985, the State of Connecticut, Division of Special Revenue, purchased an annuity contract from Met Life bearing certificate number 512 for the sum of $1,003,747.79, for the benefit of Kathleen G. Pizzi.

6. The parties stipulate that the contents of the letter from the state of Connecticut, Department of Revenue Services, dated April 28, 1992, along with its enclosures are truthful and accurate. These include the following:

a. A letter dated April 23, 1985 from the State of Connecticut to Met Life referencing the April 19, 1985 lottery drawing and describing the annuity which Met Life would issue in connection with that prize;

b. The Connecticut State Lottery Winner Claim Form;

c. A letter dated April 22, 1985 from the State of Connecticut to Ms. Pizzi officially confirming her winning ticket, enclosing her first check for $128,105.17 and advising her that the State Comptroller would be issuing checks in the like amount to her each year for the next 19 years;

d. The annuity contract issued by Met Life. The State of Connecticut, Division of Special Revenue is named as the "Owner" and "Beneficiary" of the Contract;

e. An invoice for Goods Sold or Services Rendered to the State of Connecticut dated April 23, 1985; and

f. The State of Connecticut Administrative Regulations, Operation of a State Lottery.

7. Section 12–568–5(d) of the Administrative Regulations, Operation of a State Lottery, states that "a prize to which a purchaser may become entitled shall not be assignable."

8. The Debtor filed her Chapter 7 petition on March 24, 1992.

9. The Debtor's schedules reflect secured claims in the amount of $828,540.07, unsecured priority claims in the amount of $28,000 and general unsecured claims of $380,119.29. The unsecured claims include Connecticut National's $310,518.28 claim.

10. The Debtor received her discharge on July 16, 1992. If the lottery winnings are deemed exempt, the assets to be administered by the Trustee consist solely of $4,000 realized from the sale of a vehicle (CP # 65—Trustee's Report, November 23, 1992).

## DISCUSSION

Section 541 of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This all encompassing definition is tempered by an individual debtor's right to exempt certain property specified in § 522 of the Code. Florida debtors do not have the option of choosing the federal exemptions. § 222.20, Florida Statutes. Only those assets exempt under Florida law may be claimed as

exempt in a bankruptcy case. Thus, the sole issue in this case is whether the proceeds from the lottery winnings are exempt from the claims of creditors under Florida law.

Fla.Stat. § 222.14 is controlling. In relevant part, § 222.14 provides as follows:

The proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor . . . of the person who is the beneficiary of such annuity contract, unless the . . . annuity contract was effected for the benefit of such creditor.

The Debtor contends that her lottery winnings fall within the scope of this statute. This Court disagrees. The annuity contract here was issued to the State of Connecticut, and therefore fails to meet the statutory requirement of issuance to "citizen or residents of the state [of Florida]." Moreover, Ms. Pizzi is not a beneficiary of the contract.

### A. *Florida Statute § 222.14 Does Not Exempt The Annuity Contract Purchased by The State of Connecticut*

■ Section 222.14 states that for an annuity contract to be exempt, the contract must be issued to "citizens or residents of the state [of Florida]." Here, the annuity contract was purchased by the State of Connecticut Division of Special Revenue ("State of Connecticut") on April 12, 1985. The annuity contract names the State of Connecticut as the owner, the beneficiary and the contingent beneficiary of this annuity. Since the State of Connecticut is unable to be a citizen or resident of the State of Florida, the annuity is not within the scope of the statute.

Debtor argues that the annuity itself need not be issued to a Florida resident if the proceeds are received by a Florida resident, citing *In re Benedict,* 88 B.R. 387 (Bankr.M.D.Fla.1988) (statute merely requires that the "proceeds" of annuity contracts be issued to Florida residents). This Court does not agree with the Benedict

court's interpretation. Proceeds are not issued, contracts are issued. Moreover, even accepting this interpretation, the "proceeds" here were not issued to Ms. Pizzi— only the State of Connecticut has rights to the monies under the contract.

### B. *The Debtor is Not a Beneficiary of the Annuity Contract*

■ The Florida statute also requires that the debtor be the beneficiary of the annuity for the proceeds to be exempt. Here, the named beneficiary on the annuity contract is the State of Connecticut. The contract identifies the "Connecticut Lottery, Certification # 512" as the nominee, and pursuant to the stipulated facts, Kathleen Pizzi is the party listed under Certificate # 512 with the State of Connecticut. Therefore, the Debtor claims that as the nominee, she should be considered the beneficiary of the contract.

Although these facts are undisputed, the Court does not agree that as "nominee" the Debtor is the "beneficiary". Met Life's payment obligations do not change regardless of what happens to the nominee. Whether or not Ms. Pizzi is alive, the State of Connecticut receives the yearly payments of $160,131.21. The Debtor is never the beneficiary of the proceeds of this annuity contract. The terms of this annuity contract use the nominee simply as a timing device to determine when and to whom the proceeds of the annuity should be paid.

Conversely, Ms. Pizzi has no contract with Met Life and has no right to assert any claim against Met Life under its annuity contract with the State. She receives her money directly from the State of Connecticut and is entitled to that money whether or not the State receives payments under its annuity contract. Since her rights are solely against the State, the Debtor is not the beneficiary of the annuity contract.

The Debtor cites *In re Benedict,* 88 B.R. 387 (Bankr.M.D.Fla.1988) for the proposition that the recipient of the annuity proceeds does not need to be the owner under the contract if the annuity was purchased for the benefit of the debtor. In the *Bene-*

*dict* case, the debtor was severely injured in a car accident. A lawsuit was filed and settled prior to trial. The parties entered into a structured settlement agreement which provided that monies would be used to purchase annuity contracts in favor of the debtor. Pursuant to the settlement, Merill Lynch Settlement Services purchased two annuities. Both annuity contracts listed Merill Lynch as the owner. However, one identified Vincent Benedict's estate as the beneficiary, and another designated his wife Eileen Benedict as the payee. The *Benedict* court found that even though Merill Lynch was named as the designated owner in the annuity contracts it was clear from the settlement agreement that the annuities were purchased for the benefit of the Benedicts. Judge Proctor concluded that "the debtor is the annuitant under the Transamerica policy because he is the one entitled to the annuity payments." 88 B.R. at 389.

The Debtor here also claims that the annuity was purchased for her benefit. However, Kathleen Pizzi's name fails to appear anywhere on the annuity contract, unlike in Benedict, where the debtor was named specifically in the contract as a beneficiary. This is a significant distinction. As a named beneficiary, the Benedicts had direct rights under the annuity contracts. Ms. Pizzi has no rights here under the Met Life contract. Her only enforceable claim is against the State of Connecticut.

The Debtor also argues that she is a beneficiary of the annuity since the money or income stream is being held by the State of Connecticut for the Debtor's benefit. On this point, the Debtor relies primarily on Judge Britton's decision in *In re Ebenger*, 40 B.R. 463 (Bankr.S.D.Fla.1984). Judge Britton found that for the exemption to apply the Debtor only needed to be a beneficiary of the annuity, and since he found no precedent case law defining the term beneficiary, he relied on language from the Restatement, Trusts 2d, Section 3(4) to guide him. The *Restatement* provided that "the person for whose benefit property is held in trust is the beneficiary."

Although this definitional language may appear to be helpful, the facts in *Ebenger* are clearly different from the facts here. In *Ebenger*, the Debtor was the beneficiary pursuant to the terms of the annuity contract purchased for him by his law firm. The Debtor had at all times the option to receive either the present value lump sum payment under the contract or an income stream payout over time. *Ebenger*, 40 B.R. at 464. Clearly it was the debtor who was receiving these proceeds directly from the annuity. As a result, Judge Britton found that the debtor was the beneficiary of the annuity and the income stream was held exempt.

In the case at bar, the money from the annuity is not going to the Debtor, Kathleen Pizzi, but is being paid to the State of Connecticut. In fact, Metropolitan pays the State $160,131.21 each year. The State then pays $128,105.17 to the Debtor and $32,026.04 to the Internal Revenue Service ("IRS"). Ms. Pizzi has no greater claim to the proceeds of the annuity than the IRS does. Neither does she have a say as to the use of the money the State receives from the annuity. Although the State of Connecticut chose to purchase annuities to pay off its lottery prizes, it is doing so for its own purposes and benefit and not for the benefit of the Debtor. If the State was unable to meet its obligations to the Debtor, the Debtor would have no claim against Met Life. Likewise, the State of Connecticut would still have the obligation to pay the Debtor regardless of Met Life's solvency or its receipt of annuity payments from Met Life. The privity of the annuity contract is exclusively between Met Life and the State of Connecticut. There is no privity between the Debtor and Met Life. In sum, the Debtor is not a "beneficiary" of the annuity purchased by the State of Connecticut from Met Life and therefore cannot exempt the proceeds under § 222.14.

### C. The Payments From the State of Connecticut to Ms. Pizzi Are Not Annuity Payments

■ The Court must alternatively consider whether the yearly payments paid by the State of Connecticut to Kathleen Pizzi

should be considered annuity payments. Does this income stream fall within the definition of annuity under Fla.Stat. § 222.-14?

The definition of an annuity under Florida law has been recently addressed by the Florida Supreme Court. *In re McCollam*, 612 So.2d 572 (Fla.1993). *McCollam* involved another tragic automobile accident and the damage settlement stemming from the wrongful death action. Under the terms of the agreement Travelers Insurance Company purchased an annuity contract. The debtor was listed as the beneficiary and payee under the contract. Traveler's debt obligation to the debtor is liquidated and discharged by the amount of each successive annuity payment.

The bankruptcy and district court concluded that the contract was an annuity contract and held that the proceeds were exempt assets in the debtor beneficiary's bankruptcy case. On further appeal, the 11th Circuit deemed it appropriate for the Florida Supreme Court to determine the scope of the "annuity contract" exemption in Fla.Stat. § 222.14. It certified the following question to the Florida Supreme Court:

> Whether, as a matter of law, an annuity contract which is established in lieu of a creditor paying a debtor a lump sum presently owed is exempt from creditor claims in bankruptcy under Fla.Stat. § 222.14.

*In re McCollam*, 955 F.2d 678 (11th Cir. 1992).

In a four to three decision, the Florida Supreme Court employed the plain meaning doctrine[1] and concluded that, on its face, the statute applies to all annuity contracts. The Court rejected the dissent's resort to legislative history stating that "legislative history is irrelevant where the wording of a statute is clear." Utilizing a broad definition of "annuity," the Court concluded that the contract at issue was within the statutory exemption. 612 So.2d at 574.[2]

*McCollam* holds that the purpose or source of funds of an annuity contract does not affect the exemption. *McCollam's* holding should not be extended further to enable debtors to exempt payment streams that are not payments under an actual annuity contract. Thus, *McCollam* does not compel a finding that the payment stream from Connecticut to the Debtor is itself an annuity and this Court will not broadly interpret *McCollam* to reach that result. Indeed, considering the strong dissent by three of the Justices, this Court believes a majority of the Florida Supreme Court would emphatically reject the Debtor's argument here.

Moreover, the facts in *McCollam* are distinguishable from the facts presented here, and therefore *McCollam* is not controlling. In *McCollam* the court analyzed an annuity contract purchased to settle a personal injury lawsuit. Although the reasons for purchasing the annuity are unique, the facts remain that what was bought was an annuity in the name of the debtor. Here, the income stream flowing directly to the Debtor is not an annuity at all. The monies are prize winnings stemming from the winning of the lottery. The Connecticut Lottery regulations never refers to the winnings as proceeds of an annuity, and the winner is never referred to as the beneficiary or payee of an annuity. The only annuity contract here is the annuity purchased by the State of Connecticut for its benefit and as discussed earlier, the Debtor is not a beneficiary of that contract. Even under the broad definition of annuity adopted in *McCollam*, the monies Ms. Pizzi receives from Connecticut each year are not the "proceeds of an annuity contract" under Fla.Stat. § 222.14.

---

1. The Florida Supreme Court's use of the plain meaning doctrine and consequent rejection of the invitation to consider legislative history is in step with the United States Supreme Court's methodology in several recent bankruptcy decisions. *See e.g. Patterson v. Shumate*, — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992);

*Union Bank v. Wolas*, — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

2. Based upon the Florida Supreme Court's decision, the Eleventh Circuit affirmed the district court's order. *In re McCollam*, 986 F.2d 436 (11th Cir.1993).

### POLICY ARGUMENTS

The Debtor argues that exemptions should be liberally construed in favor of debtors. She cites to both *In re Mart*, 88 B.R. 436 (Bankr.S.D.Fla.1988) and *Killian v. Lawson*, 387 So.2d 960 (Fla.1980) for the proposition that the "exemption statutes rest on considerations of public policy and should be liberally construed in favor of a debtor so that he and his family will not become public charges." 387 So.2d at 962.

The banks argue that § 222.14 is intended to protect annuity contracts which provide life insurance and retirement benefits. To broadly interpret the statute and allow lottery winnings to be claimed as exempt would, they argue, be unfair and beyond the intended purpose of the exemption.

This Court agrees that it would be inequitable for a Debtor to obtain loans in reliance upon her lottery winnings and then discharge these obligations without turning over the winnings to her estate. The exemption laws were not intended to protect instant millionaires from paying their legitimate debts. *See In re Meyers*, 139 B.R. 858 (Bankr.N.D.Ohio 1992), *citing In re Brown*, 86 B.R. 944, 947 (N.D.Ind.1988) (lottery payments, as a matter of law and policy, are included in the bankruptcy estate).[3]

Notwithstanding strong policy arguments to include lottery winnings in the estate, the Court's decision today does not and could not rest on policy grounds given the Florida Supreme Court's broad interpretation of § 222.14 in *McCollam*. Inequitable or not, if a lottery winner is specifically named as a beneficiary of an annuity contract purchased to fund a state's obligations, the winnings may be exempt. That result is compelled by the *McCollam* majority's conclusion that the purpose and nature of an annuity is irrelevant if the contract fits the broad definition of an annuity contract.

Thus, while the Court is denying Debtor's exemption claim here because she is not the beneficiary under the annuity contract, the Court would not and could not deny the exemption on policy grounds. If exempting lottery winnings is against public policy, the legislature should clarify and expressly limit the scope of § 222.14. As it now reads and as it has been interpreted by the Florida Supreme Court, the payment of lottery winnings, litigation settlements and other obligations through the vehicle of an annuity could allow debtors to successfully exempt the payments in a bankruptcy case.

### CONCLUSION

Section 222.14 of the Florida Statutes allows debtors to exempt the payments received under annuity contracts. Based upon the Florida Supreme Court's broad interpretation of this section, even the payout of a lottery jackpot could be exempt if the state discharged its obligations by purchasing an annuity contract naming the debtor as beneficiary.

In this case, the State of Connecticut purchased an annuity to facilitate but not discharge its obligation to pay Kathleen Pizzi $128,105.17 per year for twenty years. She is not a beneficiary under the annuity contract and therefore cannot claim the payments as exempt. Moreover, the payments from the State to her are not annuity payments within the statutory exemption. Thus, the unpaid lottery winnings must be turned over to the Trustee.

By separate order, the Court will sustain the objections to the Debtor's claim of exemption filed by the Trustee, the Bank of New York and Connecticut National.

---

**3.** Although both of these decisions involved lottery winnings, neither provide authority under the facts and state law applicable here. The issue in *Brown* was whether the winnings should be deemed a "spendthrift trust" and excluded from the estate under § 541(c)(2). *Meyers* involved both spendthrift trust issues and an analysis of Ohio's annuity exemption. Unlike Florida Statute § 222.14, Ohio's annuity exemption is narrowly limited to payments on account of illness, disability, death, age or length of service. *See also In re Skog*, 144 B.R. 221 (Bankr.D.R.I.1992) (lottery winnings not exempt under the federal annuity exemption in 11 U.S.C. § 522(d)(10)(E)).

## ORDER DENYING DEBTOR'S MOTION FOR RECONSIDERATION

Debtor seeks reconsideration of this Court's April 12, 1993 Order Sustaining Objection to Exemptions. The motion is denied since it does not raise any issues overlooked by the Court in its Memorandum Opinion.

One argument raised in the motion deserves further comment. As noted in paragraph 6 of the Debtor's motion for reconsideration, the Court's Memorandum Opinion stated that "it would be inequitable for a Debtor to obtain loans in reliance upon her lottery winnings and then discharge these obligations without turning over the winnings to her estate." Debtor argues that no evidence in the record supported a finding that Ms. Pizzi obtained any loans in reliance upon her winnings.

The Debtor is correct. The stipulated facts included no such finding. The Court's opinion, however, did not rely on any finding regarding the source of the debts. In fact, the opinion specifically stated that "the Court's decision today does not and could not rest on policy grounds ... Inequitable or not, if a lottery winner is specifically named as beneficiary of an annuity contract ... the winnings may be exempt." Memorandum Opinion, p. 363. In sum, the Court's decision did not depend on the source of Ms. Pizzi's debts or the fairness or unfairness of discharging these debts while claiming her lottery winnings exempt.

DONE AND ORDERED.