**In re Patricia A. MACKEY, Debtor.**

**Bankruptcy No. 92–5887–BKC–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 16, 1993.

Andrew Decker, III, Live Oak, FL, for debtor.

Anne Payne, Jacksonville, FL, for Dixie Int'l, Inc., Alan Weiss, Jacksonville, FL, for American Honda.

Jerry A. Funk, Jacksonville, FL, Chapter 13 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon objections filed by American Honda Finance Corporation ("Honda") and Dixie International, Inc. ("Dixie") to exemptions claimed by debtor. A hearing was held on May 12, 1993, and upon the evidence presented, the

Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

Debtor was the principal in a Honda dealership in Lake City, Florida, from February 1989, until August 1992. The dealership operated under the name Two Wheeler Dealer, Inc. d/b/a Lake City Honda and debtor was the sole shareholder. It filed for chapter 11 protection on March 18, 1992. The case was subsequently converted to chapter 7 on August 6, 1992. The corporate case is still pending in this Court.

Debtor owned the real estate and building occupied by Two Wheeler Dealer individually. On September 18, 1992, she sold the property for $82,800.00. At the closing, the mortgage on the property was paid and debtor received $24,986.40.

On the advice of her attorney and accountant debtor took the proceeds from the sale of the Two Wheeler Dealer property and invested in two annuity contracts with Liberty National Insurance Company. Debtor placed $2,500.00 in one annuity and $22,486.40 in the second annuity.

Debtor filed her personal bankruptcy petition on October 19, 1992. Debtor initially filed under chapter 7. On December 1, 1992, on debtor's own motion, the case was converted to chapter 13. Debtor claimed the annuities purchased with the sale proceeds as exempt property pursuant to FLA. STAT. ch. 222.14, but she did not list the land sale transaction in her schedule of financial affairs. Debtor subsequently amended her schedules to reflect this transaction.

Debtor was divorced in November 1990. Pursuant to the final divorce judgment, the marital home in Lake City, Florida, was to be sold and the proceeds divided equally between debtor and her former husband. The house has been listed for sale since 1990 but has not sold.

In September 1992, debtor accepted a job with a Honda dealership in St. Augustine, Florida. Debtor lived in the house in Lake City until October 1992. Debtor then moved to Jacksonville, Florida, to avoid the 200 mile daily commute from Lake City to St. Augustine. Debtor's son lives in the marital home while he attends college in Lake City.

Debtor claimed the Lake City property as exempt homestead property pursuant to Article X, § 4, of the Florida Constitution.

Honda and Dixie argue that debtor converted non-exempt property into exempt annuities and object to debtor's claim that the annuities are exempt from creditors claims. Honda and Dixie also object to debtor's claim of exemption for the Lake City house as homestead.

## CONCLUSIONS OF LAW

The filing of a petition in bankruptcy creates an estate comprised of all legal and equitable interests of debtor in property. 11 U.S.C. § 541. Pursuant to § 522, debtor may exempt certain property from this all encompassing estate. Section 522(d) creates the federal exemption scheme and provides that states may opt out of the federal scheme and utilize state exemptions. Florida has opted out of the federal scheme, thus debtor's exemptions are controlled by state law. FLA.STAT. 222.20.

### Annuity

Pursuant to Florida law, annuities are exempt from creditors' claims. FLA.STAT. 222.14. The statute reads as follows:

> The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

There is no question that debtor's annuities would be exempt from creditor's claims absent the objection to debtor's conversion

**512**

of non-exempt sale proceeds into exempt property.

This court recognized in *In re Elliott* that the conversion of non-exempt assets into exempt assets is not fraudulent per se. However, when the conversion is done with intent to defeat the interests of creditors, it is sufficient to deny debtor's claim of exemption. 79 B.R. 944 (Bankr. M.D.Fla.1987). Thus, to prevail, the objectors must show that debtor converted the proceeds from the sale of the Two Wheeler Dealer property into exempt annuities with intent to hinder, delay or defraud creditors. *Id.; In re Collins*, 19 B.R. 874 (Bankr. M.D.Fla.1982).

The intent to hinder, delay, or defraud creditors may be inferred from extrinsic evidence. *In re Topping*, 84 B.R. 840 (Bankr.M.D.Fla.1988); *In re Schwarb*, 150 B.R. 470 (Bankr.M.D.Fla.1992). Two important indicators of fraudulent intent are the timing of the conversion from non-exempt to exempt property and any attempts by debtor to conceal the conversion. *In re Elliott*, 79 B.R. 944 (Bankr.M.D.Fla. 1987); *In re Schwarb*, 150 B.R. 470 (Bankr. M.D.Fla.1992); *In re Tveten*, 848 F.2d 871 (8th Cir.1988); *In re Johnson*, 124 B.R. 290 (Bankr.Minn.1991).

Debtor argues that the pronouncement of this Court in *In re Collins* and adopted in *In re Elliott* does not apply in this case because the debtor in *Collins* converted business assets into exempt personal property and here debtor did not sell business assets. 19 B.R. 874 (Bankr.M.D.Fla.1982); 79 B.R. 944 (Bankr.M.D.Fla.1987). The distinction drawn by debtor is a distinction without a difference. Because debtor personally guaranteed Two Wheeler Dealer's debts, her individual property is subject to claims for business debts, and the conversion of individual property is no different than the conversion of business property and, as in *Collins*, this depletion decreases the assets available to pay creditors. Consequently, the Court does not agree with debtor that *Collins* does not apply.

The Court will now examine the circumstances surrounding debtor's conversion of sale proceeds into annuities to ascertain the intent behind the actions.

Debtor sold the Two Wheeler Dealer property on September 19, 1992, and filed for chapter 7 relief one month later on October 19, 1992. On the day of the closing, debtor received a check from her attorney's trust account for the proceeds of the sale. Debtor then drove approximately 100 miles to Jacksonville, purchased two annuities, and returned to Lake City. When asked on cross-examination why she drove to Jacksonville to buy the annuities on the day of closing, debtor stated that having the money "would have been a big temptation" (Deposition Tr. 46) and that was "what I wanted to do with it." (Hearing Tr. 35).

Debtor also testified that she purchased the annuities to insure that she could continue to pay ordinary living expenses and any medical expenses she might incur. However, debtor has not received any disbursements from the annuities and does not know when or how the annuities pay out. Debtor's lack of knowledge about the terms of the annuities indicates that, rather than trying to insure that she could continue to pay living expenses, debtor was attempting to place the proceeds of the land sale out of reach of her creditors.

In addition, debtor failed to list the sale of the property on the schedules filed with her bankruptcy petition. Debtor amended her schedules to reflect the sale after attending the Section 341 meetings held in her chapter 7 and 13 cases. Debtor argues that she merely forgot to list the sale on her schedules and points to her failure to list some stock on the same schedules. When debtor discovered her failure to list the stock, she took the certificates with her when she met with the chapter 7 trustee. Forgetting about some stock received at some prior time and forgetting the receipt of over $24,000.00 one month prior to filing for relief are transactions of a different import, and the Court is not convinced that debtor's failure to list the sale was due to forgetfulness.

Debtor also testified that she thought Two Wheeler Dealer had sufficient invento-

ry to satisfy the debts of Dixie and Honda. Debtor testified that she did not pay the debt to Dixie with the sale proceeds even though there were sufficient funds to pay the debt in full because she thought payment would constitute preferring one creditor over another and be voidable. This testimony indicates that debtor understands the bankruptcy process and indicates that debtor is well aware of the effect of placing funds into annuities. In addition, debtor testified that one reason for purchasing the annuities was to protect the funds from her creditors. Taken together, debtor's actions and testimony indicate an intent to keep assets from creditors and to hinder them in their attempt to satisfy their claims.

The Court finds from the totality of the circumstances debtor intended to hinder, delay, or defraud creditors by placing the sale proceeds into exempt annuities. Consequently, the Court will sustain the objections to debtor's claim of exemptions for the two Liberty National annuities.

### Homestead

Dixie and Honda also object to debtor's claiming the Lake City house as exempt homestead property. Pursuant to Article X, Section 4 of the Florida Constitution, an individual's homestead is not subject to creditors claims. That section states:

A homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family.

Because Florida has opted out of the federal exemption scheme, debtors in bankruptcy are entitled to this homestead exemption. Dixie and Honda argue that debtor has abandoned her homestead and thus, is not entitled to claim it as exempt.

Once property is imbued with homestead status, it remains homestead until it is abandoned. *In re Ehnle,* 124 B.R. 361 (Bankr.M.D.Fla.1991); *Olesky v. Nicholas,* 82 So.2d 510 (Fla.1955). Absence from the property is not determinative, rather intent is the critical factor in determining whether the homestead has been abandoned. *Id.* Thus the question is a factual one that requires the Court consider the facts and circumstances of each individual case. *In re Boucher,* 8 B.R. 713 (Bankr.M.D.Fla.1981); *In re McCarthy,* 13 B.R. 389 (Bankr.M.D.Fla.1981).

This Court held in *In re McCarthy* that debtors were not entitled to claim their prior residence as homestead where they had received a contract to sell their home prior to filing for bankruptcy and closed the sale post-petition. 13 B.R. 389 (Bank. M.D.Fla.1981). The debtors in *McCarthy* did not intend to purchase another home, rather they intended to divide the proceeds of the sale. Based on debtor's lack of intention to establish a new homestead, the Court sustained the trustee's objection to exemption and denied the claimed homestead exemption. *Id.*

Similarly, debtor moved from the Lake City house to an apartment in Jacksonville in October 1992. The house has been on the market continuously from 1990 until the present and has not sold. Pursuant to debtor's divorce settlement, when the house sells the proceeds are to be divided between debtor and her former husband. Debtor testified that if an acceptable offer was received she would accept it. She stated that one offer that she would have accepted had been rejected by her former husband. Debtor also testified that she would return to the Lake City property if the house did not sell and if she could find employment in Lake City.

The Court finds that debtor does not intend to use the Lake City house as her permanent residence and that she has abandoned the homestead. Although, there was no evidence whether debtor intends to purchase a new home once the

Lake City property is sold,[1] what is apparent from the evidence presented is that debtor does not intend to return to the Lake City house absent extenuating circumstances and that her real intention is to sell the home and not to return to it.

### Conclusion

The objecting parties have shown that debtor is not entitled to exempt the annuities purchased on the eve of bankruptcy because debtor had the intent to delay or hinder creditors and that debtor has abandoned her homestead and may not avail herself of the homestead exemption. The Court will enter a separate order consistent with these findings of fact and conclusions of law.

### ORDER SUSTAINING OBJECTIONS TO EXEMPTIONS CLAIMED BY DEBTOR

Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED

1. American Honda Finance Corporation's and Dixie International, Inc.s' Objections to Exemptions Claimed by Debtor with regard to the two Liberty National Insurance Company annuity contracts in the amount of $2,500.00 and 22,486.40 are sustained.

2. American Honda Finance Corporation's and Dixie International, Inc.s' Objections to Homestead Exemption Claimed by Debtor are sustained.

---

**1.** This Court noted in *In re McCarthy* if the proceeds from the voluntary sale of the homestead are intended to be invested in a new homestead the proceeds continue to be exempt homestead property. 13 B.R. 389, 391 (Bankr. M.D.Fla.1981).