**In re Dudley D. ALLEN, Debtor.**

**Bankruptcy No. 96–0565–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 18, 1996.

Raymond R. Magley, Jacksonville, FL, Alan F. Curley, Chicago, IL, for George Washington Life Ins. Co.

Richard R. Thames, Jacksonville, FL, for debtor.

Valerie Hall Manuel, Chapter 7 Trustee, Jacksonville, FL.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON GEORGE WASHINGTON LIFE INSURANCE COMPANY'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon George Washington Life Insurance Company's (GW's) Objection to Dudley D. Allen's (Debtor's) claim of exemptions. Upon the evidence presented at hearings on July 18 and July 19, 1996, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Debtor was a Director of GW from 1982 to 1991. (Tr. 46). He also acted as an attorney for GW and worked on its individual health and life insurance claims. (Id.).

2. On September 5, 1990, the Circuit Court of Kanawha County of West Virginia entered an Order Granting the Insurance Commissioner of the State of West Virginia the right to seize the assets of GW. (GW Ex. 8). On June 3, 1991, Hanley C. Clark was appointed as GW's Receiver. (Doc. 28).

3. On September 3, 1992, Hanley C. Clark (Receiver) sued Debtor and other directors of the GW, alleging, among other things, breach of fiduciary duties to GW and professional malpractice. (Id.). After a jury trial, a verdict was entered on April 10, 1995, against the defendants, and the West Virginia District Court subsequently entered the judgment for $6,198,591 on July 7, 1995. (Id.). Although Debtor was found ten percent at fault on both the breach of fiduciary duty and professional malpractice counts, he is jointly and severally liable for the full amount of the judgment. (GW Ex. 13).

4. On September 26, 1995, the West Virginia District Court's judgment was registered in the United States District Court of the Middle District of Florida. (Doc. 38).

5. On November 16, 1996, the Receiver moved the West Virginia District Court to order the Debtor to liquidate and distribute a Merrill Lynch IRA valued at $2,778.87 and a Mass Mutual IRA valued at $142,068.74. (Doc. 38). On January 11, 1996, the West Virginia District Court granted the Motion. (Id.).

6. On February 1, 1996, Debtor filed for relief under Chapter 7 of the Bankruptcy Code. (Doc. 1). In his bankruptcy schedules, Debtor claimed the following properties as exempt:

| Description | Value | Basis of Exemption |
|---|---|---|
| 1 Share of Ambrosia Mining Co. | Unknown | Tenants by the Entireties |
| 100 Shares of Dudley Allen, P.A. | Unknown | Art. X, § 4 of Fla. Const. |
| 100 Shares of Monsanto Co. | $12,250 | Tenants by the Entireties |
| 150 Shares of H.J. Heinz Corp. | $4,968 | Tenants by the Entireties |
| 1974 Pontiac Le Mans | $500 | § 222.25, Fla.Statutes |
| 200 Shares of Dial Corp. | $5,924 | Tenants by the Entireties |
| 200 Shares of Kellogg Co. | $15,450 | Tenants by the Entireties |
| 2362 Shares of Barnett Banks, Inc. | $139,358 | Tenants by the Entireties |
| 300 Shares of E.I. Du Pont De Nemours & Co. | $20,961 | Tenants by the Entireties |
| 300 Shares of Norfolk Southern Corp. | $23,811 | Tenants by the Entireties |
| 300 Shares of Weyerhauser Corp. | $12,975 | Tenants by the Entireties |
| 318 Ptshp. Shares of Servicemaster Ltd. Ptshp. | $9,619 | Tenants by the Entireties |
| 400 Shares of Quakers Oats | $13,800 | Tenants by the Entireties |
| 4620 Shares of First Union | $256,964 | Tenants by the Entireties |
| 500 Shares of PharmaKinetics Labs, Inc. | $105 | Tenants by the Entireties |
| 600 Shares of Am. Heritage Life | $13,722 | Tenants by the Entireties |
| 600 Shares of PharmaKinetics Labs, Inc. | $126 | Tenants by the Entireties |
| 637 Ptshp. Shares of Servicemaster Ltd. Ptshp. | $19,269 | Tenants by the Entireties |
| 750 Shares of Flowers Industries | $9,090 | Tenants by the Entireties |
| Cash in Wallet | $50 | Art. X, § 4 of Fla. Const. |
| Checking Acct. with Barnett Bank Account No. 2103047654 | $283.26 | Tenants by the Entireties |
| Clothes, Jewelry, Books, etc. | $744 | Art. X, § 4 of Fla. Const. |
| Crown Life Ins. Co. Term Policy | Unknown | § 222.14, Fla. Statutes |
| Disability Ins. with Provident Life Ins., National Life of Vermont and New England Mut. Life | Unknown | § 222.14, Fla.Statutes |
| National Life Ins. Term Policy | Unknown | § 222.14, Fla.Statutes |
| Executive Life Ins. Annuity | Unknown | § 222.14, Fla.Statutes |
| TransAmerica Occidental Life Ins. Annuity | Unknown | § 222.14, Fla.Statutes |
| Metropolitan Life Ins. Co. Annuity | Unknown | § 222.14, Fla.Statutes |
| Ottis Williams & Michael Felts Annuities | Unknown | § 222.14, Fla.Statutes |
| U.S. Navy Disability/Pension | Unknown | § 222.21, Fla.Statutes |
| Mass Mutual Annuity IRA | $142,068.74 | §§ 222.14, .21, Fla.Statutes |
| Merrill Lynch CMA Acct. No. 742–52660 | $2,558.01 | Tenants by the Entireties |
| Merrill Lynch IRA | $2,778.87 | § 221.21, Fla.Statutes |
| National Service Life Ins. Co. | Unknown | § 222.14, Fla.Statutes |
| Personal Residence | $81,551 | Art. X, § 4 Fla. Const. |
| Prudential Ins. Co. Term Policy | Unknown | § 222.14, Fla.Statutes |
| TransAmerican Occidental Life Ins. Annuity | Unknown | § 222.14, Fla.Statutes |
| Various Personal Property | $1,874.50 | Tenants by the Entireties |
| 375 Shares of Flowers Industries | $4,545 | Tenants by the Entireties |
| ITT Hartford Insur. Policy | $1,433.80 | § 222.14, Fla.Statutes |

(Docs. 2, 15).

---

7. On March 21, 1996, GW filed an objection to Debtor's claim of exemptions, and on June 3, 1996, objected to Debtor's Amended claim of exemptions. (Docs. 11, 18). The bases of GW's objections are fraudulent conversion, certain funds are not property of the estate, and certain properties are not exempt. (Doc. 37).

8. First, GW objects to the following shares of stock as exempt on the ground that the ownership of the shares as tenancy by the entireties may be a result of conversion of non-exempt assets to exempt assets with intent to hinder, delay or defraud creditors:

| | | |
|---|---|---|
| 1 Share of Ambrosia Mining Co. | Unknown | Tenants by the Entireties |
| 100 Shares of Monsanto Co. | $12,250 | Tenants by the Entireties |
| 150 Shares of H.J. Heinz Corp. | $4,968 | Tenants by the Entireties |

| | | |
|---|---|---|
| 200 Shares of Dial Corp. | $5,924 | Tenants by the Entireties |
| 200 Shares of Kellogg Co. | $15,450 | Tenants by the Entireties |
| 2362 Shares of Barnett Bank | $139,358 | Tenants by Entireties |
| 300 Shares of E.I. Du Pont | $20,961 | Tenants by Entireties |
| 300 Shares of Norfolk Southern Corp. | $23,811 | Tenants by the Entireties |
| 300 Shares of Weyerhauser Corp. | $12,975 | Tenants by the Entireties |
| 318 Ptshp. Shares of Servicemaster Ltd. Ptshp. | $9,619 | Tenants by the Entireties |
| 400 Shares of Quakers Oats | $13,800 | Tenants by the Entireties |
| 4620 Shares of First Union | $256,964 | Tenants by Entireties |
| 500 Shares of PharmaKinetics Labs | $105 | Tenants by the Entireties |
| 600 Shares of Am. Heritage Life | $13,722 | Tenants by the Entireties |
| 600 Shares of PharmaKinetics Labs | $126 | Tenants by the Entireties |
| 637 Ptshp. Shares of Servicemaster Ltd. Ptshp. | $19,269 | Tenants by the Entireties |
| 750 Shares of Flowers Industries | $9,090 | Tenants by the Entireties |
| 375 Shares of Flowers Industries | $4,545 | Tenants by the Entireties |
| Merrill Lynch CMA Acct. No. 742–52660 | $2,558.01 | Tenants by the Entireties |

(Docs. 11, 18). GW also objects to the Mass Mutual Annuity IRA and the Merrill Lynch IRA on the additional ground that the West Virginia District Court ordered the Debtor to liquidate the IRAs, and turn over the cash proceeds to GW; therefore, the IRAs are not property of the estate. (Doc. 11).

9. GW further objects to certain monthly payments Debtor receives through annuity contracts claimed as exempt on the basis that they were not issued to a Florida citizen or resident and the Debtor is not a beneficiary of the annuity contracts. (Id.). GW also objects to various personal properties Debtor claimed as exempt because they exceed $1,000 in value. (Docs. 11, 18). The Court utilizes Debtor's Schedule "C" to state the value of Debtor's claim of exemptions, and lists properties being objected to as they appeared in GW's pleadings. (Docs. 2, 11, 18). Some of the exemptions GW objected to in its original pleadings changed in their post-hearing brief. (Doc. 37).

10. On July 18 and 19, 1996, this Court held hearings on GW's objection to Debtor's claim of exemptions. (Docs. 31, 32). At the hearings, Debtor testified that he and his wife, Lenorah Jane Allen, have been married since March 8, 1969. (Tr. 126). Since that time, the Debtor and his wife have held joint bank accounts in tenancy by the entireties. (Tr. 129–30). Shortly after their marriage they began investing in stocks, beginning with one share of stock received as a wedding gift. (Tr. 126–27). The couple opened several brokerage accounts in the 1970's, including one with Merrill, Lynch, Pierce, Fenner & Smith in the form of tenants by the entireties. (Tr. 129–31). The funds for the purchase of these stocks came from the couple's joint savings. (Id.). Account statements and trade confirmations slips show that ownership of stocks in the Merrill Lynch account were held in tenancy by the entireties. (Id.; Debtor Ex. 2–20).

11. On May 15, 1980, Debtor and his wife opened the Merrill Lynch Cash Management Account (CMA account) in the form of tenants by the entireties. (Tr. 49). Funds held in the prior brokerage account with Merrill Lynch were transferred to the CMA account. (Tr. 132–33). Debtor and wife also deposited $10,000 cash into the CMA account, which came from their joint savings. (Tr. 137). In addition, the couple deposited into the CMA account stock certificates that had been purchased during the 1970's and were held as tenants by the entireties. (Tr. 137). Another source of funds deposited into the CMA account came from Debtor's income from Wilbur & Allen, P.A., and dividends, interest and trading profits from the account itself. (Tr. 52–53).

12. Debtor receives monthly payments from Executive Life Insurance Annuity in the amount of $194.77, TransAmerica Occidental Life Insurance Annuity in the amount of $88.89, Metropolitan Life Insurance Company Annuity in the amount of $94.44, and Ottis Williams & Michael Felts Annuities in

the combined amount of $172.60. (Tr. 64–70; Debtor Ex. 31–35). Debtor is also the owner and beneficiary of an ITT Life Insurance policy, in which Debtor's former law partner, John Wilbur, is the insured. (Tr. 65). On May 28, 1996, Debtor received a check in the amount of $1,180.07 from ITT Life Ins. Co., representing the cash surrender value of the policy. (GW Ex. 26).

### CONCLUSIONS OF LAW

The issue before the Court is whether the Debtor's claim of exemptions should be disallowed. A case commenced under Title 11 of the United States Code creates an estate which is comprised of all the property in which the debtor has a legal or equitable interest as of the date of the filing of the petition. 11 U.S.C. § 541(a). However, an individual is permitted to exempt property from the estate by claiming exemptions authorized by 11 U.S.C. § 522. *See* 11 U.S.C. § 522; *In re Colston,* 87 B.R. 193, 194 (Bankr.M.D.Fla.1988).

Section 522 allows a state to opt out of the federal exemptions provided for in subsection 522(d) and limit its residents to those exemptions provided under the state law. 11 U.S.C. § 522(b); *In re Podzamsky,* 122 B.R. 596, 598 (Bankr.M.D.Fla.1990). The State of Florida has exercised this option. *Id.;* Fla. Stat. § 222.20 (1995). Therefore, a debtor who is a Florida resident may claim exemptions pursuant to subsections 522(b)(2)(A)–(B), Article X, Section 4 of the Florida Constitution and Fla.Stat. ch. 222.

■ The objector has the burden of proving, by preponderance of the evidence, that the Debtor is not entitled to the exemptions claimed. *In re Rightmyer,* 156 B.R. 690, 692 (Bankr.M.D.Fla.1993). Once the objector has made a prima facie showing that the claimed exemptions should be disallowed, the burden then shifts to the Debtor to prove that the exemptions are legally valid. *Id.*

In this case, GW asserts that Debtor's claim of exemptions to various properties are improper and should be disallowed. GW's objection are: (1) the existence of fraudulent conversion of non-exempt assets to exempt assets; (2) certain funds are not property of the estate; and (3) certain properties are not exempt. The Court will address each basis accordingly.

### A. FRAUDULENT CONVERSION

■ GW first asserts that certain shares of stock, as enumerated in paragraph 8 of the above Findings of Fact, are not exempt because they were obtained from fraudulently converted non-exempt funds. (Doc. 37). Debtor responds that the shares of stock are exempt as properties held in tenancy by the entireties. Under section 522(b)(2)(B) of the Bankruptcy Code, "an individual debtor may exempt from property of the estate ... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law." 11 U.S.C. § 522(b)(2)(B) (1994).

■ In Florida, a tenancy by the entireties estate is properly created in either personalty or realty when the unities of possession, interest, title, time and marriage are satisfied. *In re Stanley,* 122 B.R. 599, 604 (Bankr.M.D.Fla.1990). In matters involving personalty, in addition to satisfying the five unities required to create a tenancy by the entireties estate, there must be a showing that the parties intended to create tenancy by the entireties. *Id.* The policy behind proving intent to create a tenancy by the entireties estate in personalty is to prove that such tenancy was not created solely to insulate property from the claims of creditors of one of the spouse. *Id.* To prove such intent, there must more than mere testimonial assertions by the Debtor, and some documentary proof is needed. *Id.*

■ In this case, the five unities to create a tenancy by the entireties estate are satisfied, and Debtor and his wife demonstrated a clear intent to create tenancy by the entireties estate in the shares of stock in their CMA account, which also is in the form of tenancy by the entireties. (Debtor Ex. 1–18). Therefore, Debtor's claim of exemptions as to the shares of stock are valid as tenants by the entireties. Having concluded that

Debtor's claim of exemptions is valid as to shares of stock held in tenancy by the entireties, the threshold issue is whether an otherwise valid claim of exemptions should be disallowed on a finding of fraudulent conversion of non-exempt assets to exempt assets.

The courts in this district are divided on this issue. Some have taken the position that the law does not permit disallowing exemptions otherwise valid under state law even if there is a finding of fraudulent conversion of non-exempt assets to exempt assets. *See, e.g., In re Clements*, 194 B.R. 923, 927 (Bankr.M.D.Fla.1996); *Crews v. First Colony Life Ins. Co. (In re Barker)*, 168 B.R. 773, 776 (Bankr.M.D.Fla.1994). The rationale for this approach is that the law lacks any authority that would permit disallowance even if the assets were converted with intent to hinder, delay or defraud creditors. *Barker*, 168 B.R. at 776. The *Clements* and *Barker* courts have further reasoned that other remedies are available to creditors and trustees, such as a Section 548 avoidance action, a motion to dismiss for cause, and a complaint to deny debtor's discharge. *Clements*, 194 B.R. at 927; *Barker*, 168 B.R. at 776.

However, other courts, including this Court, have held that a debtor's claim of exemptions can be denied upon a finding that the debtor intended to hinder, delay, or defraud creditors by creation of the exemptions. *See, e.g., In re Mackey*, 158 B.R. 509, 512 (Bankr.M.D.Fla.1993); *In re Schwarb*, 150 B.R. 470, 473 (Bankr.M.D.Fla.1992); *In re Elliott*, 79 B.R. 944, 946 (Bankr.M.D.Fla. 1987). This Court adheres to its published opinions.

■■■■ This Court has recognized that the conversion of non-exempt assets into exempt assets is not fraudulent per sé. *Mackey*, 158 B.R. at 512; *Elliott*, 79 B.R. at 946. However, when the conversion is done with intent to defeat the interests of creditors, it may be sufficient to deny debtor's claim of exemption. *Id.* To prevail, the objector must show that Debtor converted non-exempt assets to exempt assets with intent to hinder, delay or defraud creditors. *Id.* The intent to hinder, delay, or defraud creditors may be inferred from extrinsic evidence. *Id.* Two important indicators of fraudulent intent are the timing of the conversion from non-exempt to exempt property and any attempts by debtor to conceal the conversion. *Mackey*, 158 B.R. at 512; *Elliott*, 79 B.R. at 946.

In this case, the Court concludes that the evidence does not establish fraudulent intent to warrant disallowing Debtor's claim of exemptions in the shares of stock held in tenancy by the entireties. GW alleges that between 1989 and 1993, Debtor deposited $639,379.88 into the Merrill Lynch CMA account and the purchase price of the shares of stock acquired between that period is $92,504.88. (Doc. 37, at 1–13). GW further alleges that these funds deposited into the CMA account were non-exempt income from Debtor's former law firm, Wilbur & Allen, P.A. (*Id.*). GW contends that the monies Debtor received from Wilbur & Allen, P.A. were non-exempt under Fla.Stat. § 222.11 because those funds were not wages and were never declared as such on Debtor's tax returns. (*Id.*). By depositing this alleged non-exempt income into the CMA tenancy by the entireties account, GW contends that Debtor attempted to convert his non-exempt funds to exempt funds; and then purchased shares of stock in the form of tenancy by the entireties. (*Id.*).[1]

Utilizing the factors in *Mackey*, the facts do not reveal an intent to hinder, delay, or defraud creditors. Debtor and his wife have been married since March 8, 1969. (Tr. 126). Since that time, the Debtor and his wife have held joint bank accounts in tenancy by the entireties. (Tr. 129–30). Shortly after their marriage they began investing in stocks, beginning with one share of stock received as a wedding gift. (Tr. 126–27). The couple opened several brokerage accounts in the 1970's, including one with Merrill, Lynch, Pierce, Fenner & Smith in form of tenancy by the entireties. (Tr. 129–31). Debtor and his wife purchased stocks through the Merrill

---

1. GW also asserts that the non-exempt income from Wilbur & Allen, P.A. were commingled with pre-existing exempt funds, making it difficult to trace Debtor's investment in the shares back to exempt funds; and therefore, it should be presumed that the shares purchased in the CMA account in tenancy by the entireties are from non-exempt funds. (Doc. 37, at 13–18).

Lynch account in the form of tenancy by the entireties. (*Id.*). The funds for the purchase of these stocks came form the couple's joint savings. (*Id.*). Account statements and trade confirmations slips show that ownership of stocks in the Merrill Lynch account were held in tenancy by the entireties. (*Id.;* Debtor Ex. 2–20).

■ On May 15, 1980, Debtor and his wife opened the CMA account with Merrill Lynch in the form of tenancy by the entireties. (Tr. 49). Funds held in the prior brokerage account with Merrill Lynch were transferred to the CMA account. (Tr. 132–33). Debtor and wife also deposited $10,000 cash into the CMA account, which came from their joint savings. (Tr. 137). In addition, the couple deposited stock certificates they purchased during the 1970's into the CMA account, and those stocks also held as tenants by the entireties. (Tr. 137). The CMA account and some of the stocks the account existed prior to Debtor becoming a director of GW in 1982. (Tr. 137, 140–48). Debtor's pattern of investment did not change after GW's claim arose, and was not done in secrecy. The Court concludes that Debtor did not fraudulently convert non-exempt assets to exempt assets, and GW's objections regarding Debtor's claim of exemptions of the shares of stock held in tenancy entireties will be overruled, and the exemptions will be allowed.[2]

## B. PROPERTY OF THE ESTATE UNDER SECTION 541(d)

■ GW further contends that the Mass Mutual Annuity IRA with a $142,068.74 value and Merrill Lynch IRA with a $2,778.87 value that Debtor claimed as exempt are not properties of the estate because of the West Virginia District's Order directing Debtor to liquidate the IRAs and turn over the proceeds to GW. (Doc. 37, at 34–38). GW argues that this Court should disallow Debtor's claim of exemptions in the IRAs for two reasons: (1) pursuant to the Turnover Order

of the West Virginia District Court, Debtor has no equitable interest in the IRAs; and (2) Debtor is precluded by collateral estoppel from exempting the IRAs because the West Virginia District Court has already held in the Turnover Order that the IRAs are not exempt. (Doc. 37, at 34–38). It is undisputed that the IRAs qualify for exemption pursuant to Fla.Stat. § 222.21. Therefore, the central issue is whether the Turnover Order can be the basis for disallowing Debtor's claim of exemptions of the IRAs.

To resolve this issue, the Court first addresses GW's assertion that the IRAs are not property of the estate because Debtor holds only a bare legal title to the IRAs pursuant to the Turnover Order. To support its argument, GW directs the Court's attention to *City Nat. Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 828 F.2d 699 (11th Cir.1987) and *In re Naydan,* 162 B.R. 204 (Bankr.W.D.Ark.1993). In these cases, the courts were faced with situations where "constructive trusts" were imposed. In *General Coffee,* the Court of Appeals noted that the bankruptcy court found that the debtor had defrauded a creditor, and a constructive trust was consequently imposed in favor of the creditor. *General Coffee,* 828 F.2d at 700. The Court of Appeals agreed with the lower court that a constructive trust was created in favor of the creditor, and then proceeded to resolve the issue of whether the debtor could bring the trust assets into the estate for distribution to its creditors under section 544(a). *Id.* at 704. The Court of Appeals held that the Debtor could not bring the trust assets into its bankruptcy estate. *Id.* at 707. Also, in *Naydan,* a Texas state court had previously imposed a constructive trust on the property of the debtors. *Naydan,* 162 B.R. at 206. Based on the imposition of that constructive trust, the bankruptcy court concluded that the debtors had no equity in the trust property to which they held legal title, and consequently, their claim of exemptions was in effective. *Id.* at 207.

---

**2.** Alternatively, GW asserts that the Debtor's claim of exemptions should not be allowed because New York law governs the Merrill Lynch CMA account, and New York law does not recognize tenancy by the entireties in personalty. The Court concludes this argument is without merit

because the issue before the Court is whether Debtor can claim the shares of stock in question as exempt under Florida law, which recognizes tenant by the entireties in personalty. New York law would not control Debtor's exemption rights in the State of Florida.

In this case, the West Virginia District Court's Memorandum Opinion and Order did not impose a constructive trust on the IRAs. (GW's Ex. 16). Therefore, GW's argument fails in this respect.

■ Next, the Court turns to GW's second contention that Debtor is collaterally estopped from claiming the IRAs as exempt because the West Virginia District Court held that the IRAs were not exempt under West Virginia law. (Doc. 37; GW Ex. 16). GW correctly shows that there are four prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action; and (4) the burden of persuasion must not be significantly heavier than the burden of persuasion in the earlier action. *In re Bush,* 62 F.3d 1319, 1322 (11th Cir.1995).

In this case, however, the prerequisites to applying collateral estoppel cannot be satisfied because the issue in this case is whether the Debtor can claim the IRAs as exempt pursuant to section 222.21 of the Florida Statutes. This issue was not actually litigated in the West Virginia District Court, nor was this issue critical and necessary to granting the Turnover Order. Therefore, GW's argument also fails in this respect and Debtor's claim of exemptions as to the IRAs is valid and exemptions should be allowed.

## C. EXEMPTIONS UNDER FLORIDA STATUTES

■ GW also objects to the Debtor's claim of exemptions of payments received from certain annuity contracts and cash surrender value of a life insurance policy on the ground that they do not meet requirements of Fla.Stat. § 222.14. Section 222.14 provides that:

> The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon what ever form, shall not in any case be liable to attach-

ment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

Fla.Stat. § 222.14 (1995). This Court has previously stated that "[e]xemptions under state law rest on consideration of public policy and should be liberally construed in favor of the debtor." *In re Benedict,* 88 B.R. 390, 392 (Bankr.M.D.Fla.1988) (citations omitted).

### 1. Annuity Contracts

The bases of GW's objection to Debtor's claim of exemptions to the payments received from the annuity contracts are that three of the annuity contracts were not issued to a Florida citizen or resident and Debtor is not a beneficiary of the annuity contracts. (Doc. 37, at 38–41). Addressing the first basis of GW's objection, this Court has held that "there is no requirement that the annuity itself be issued to a resident of this state[, and t]he statute merely requires that the *proceeds* of the annuity contracts be issued to residents of this state." *Benedict,* 88 B.R. at 393 (emphasis in original). The Court's previous holding in *Benedict* is equally applicable in this case. Therefore, GW's objection to Debtor's claim of exemptions on the basis that they were not issued to a Florida citizen or resident fails, and the proceeds of the Executive Life Insurance Company, TransAmerica Occidental Life, Metropolitan Life Insurance Company annuity contracts are exempt.

■ Next, the Court turns to the second basis of GW's objection that Debtor is not a beneficiary of the annuity contracts. In *Benedict,* this Court adopted the definition of "beneficiary" as "any person with a beneficial interest in the annuity, including the annuitant." *Benedict,* 88 B.R. at 393. In this case, the Debtor is a beneficiary of the contracts because he has a beneficial interest in the annuity contracts. (Debtor Ex. 31–35). Under the definition set forth in *Benedict* and in keeping with the public policy to liberally construe exemptions in favor of the

debtor, the Court concludes that the Debtor may claim the proceeds from annuity contracts listed on pages 1 and 2 of Debtor's Schedule C as exempt.

### 2. Cash Surrender Value of the Life Insurance Policy

 Next, GW argues that the cash surrender value of the ITT Life Insurance policy is not exempt because Debtor is the owner and beneficiary, but not the insured. (Doc. 37, at 43–44). Section 222.14 of the Florida Statutes states that, in part, that: "[t]he cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state . . . shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose *life is so insured.*" Fla.Stat. § 222.14 (emphasis added).

In this case, the insured is John Wilbur. (Tr. 65). The objection is valid. Therefore, Debtor's claim of exemption for the cash surrender value of the ITT Life Insurance policy should be disallowed because the statute by its own terms provides that the person claiming the exemption must be the insured.

### D. EXEMPTIONS UNDER THE FLORIDA CONSTITUTION

 GW objects to Debtor's claim of exemptions of households goods and law firm's stock on the grounds that the value of the various properties exceeds the $1,000 personal property exemption, and certain properties listed as owned as tenants by the entireties are not owned as such. Article X, § 4(a)(2) of the Florida Constitution provides, in part, that: "There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon . . . the property owned by a natural person: (2) personal property to the value of one thousand dollars." Fla. Const. art. X, § 4(a)(2). In this case, Debtor claimed as exempt: (1) household goods held in tenancy by the entireties valuing $1,847.50; (2) separately owned property valuing $744; and (3) Dudley Allen, P.A. stock at an approximate value of $206.00. The Court will address each claim of exemption accordingly.

### 1. Household Goods Owned Jointly by Debtor and his Wife

Utilizing the requirements for creating tenancy by the entireties in personalty as outlined above by the Court, the Debtor has met his burden of proving that the properties claimed as exempt are owned in Tenancy by the Entireties. (Debtor Ex. 27). Debtor testified that the household goods were purchased with funds from he and his wife's joint account held in tendency by the entireties, and that the they were intended to be owned as tenants by the entireties. (Tr. 195–98). Therefore, the Court concludes that Debtor's claim of exemption for household goods is validly claimed and the exemption should be allowed.

### 2. Separately Owned Personal Property

 GW's objection to Debtor's separately owned personal properties valued at $744 is overruled and exemption is allowed because the value is below the $1,000 limit.

### 3. Dudley D. Allen, P.A. Stock

 GW further objects to the Debtor's claim of exemption for the 100 shares of stock in Dudley D. Allen, P.A. on the ground that Debtor's value of $206 is understated because the firm made profits and has receivables in excess of $206. (Doc. 37, at 44–46) However, because no other evidence of the value of the stock was presented, the Court accepts the Debtor's value of $206. Therefore, GW's objection to Debtor's claim of exemption for the Dudley D. Allen, P.A. stock should be overruled, and exemption allowed.

### CONCLUSION

GW's objections to Debtor's claim of exemptions is overruled, with exception of the cash surrender value of the ITT Life Insurance policy. The Court will enter an Order consistent with these Findings of Fact and Conclusions of Law.