**In re John H. WILBUR, Debtor.**

**Bankruptcy No. 96–3562–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 17, 1997.

Raymond Magley, Jacksonville, FL, for Hanley C. Clark.

Ronald Bergwerk, Jacksonville, FL, for Debtor.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON RECEIVER'S AND TRUSTEE'S OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTIONS*

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on objections to John H. Wilbur's (Debtor's) claim of exemptions filed by Hanley C. Clark, Commissioner of Insurance, in his official capacity as Receiver of George Washington Life Insurance Company (Receiver) and Charles W. Grant, Chapter 7 Trustee (Trustee). Upon the evidence presented at the hearing on December 11, 1996, the Court enters the following Findings of Fact and Conclusions of Law:

### *FINDINGS OF FACT*

1. On August 23, 1958, Debtor married Alice Haney Wilbur. (Receiver and Trustee's Ex. 2). In February 1973, the couple purchased a house on Ponte Vedra Boulevard (the Ponte Vedra house), in Ponte Vedra Beach, Florida. (Debtor Ex. 1). The couple lived there until April 1977, when Debtor moved out of the house. (Tr. 15). On October 10, 1979, the marriage was dissolved and a Final Judgment of Dissolution of Marriage was entered on January 16, 1980. (Tr. 15). The state court gave Mrs. Wilbur exclusive possession and use of the Ponte Vedra house until such time that no unmarried minor dependent children of the parties reside there. (Tr. 16). By operation of law, Debtor and his former wife own the Ponte Vedra house as tenants-in-common, but Debtor is required to pay the mortgage, taxes, and insurance on the house during the period his former wife has exclusive possession. (*Id.*). Debtor is to receive credit for all such amounts against the former wife's one-half interest in the proceeds upon sale of the property. (*Id.*).

2. In 1993, Debtor filed a partition action against his former wife to force the sale of the Ponte Vedra house. (Tr. 39). The partition action was brought so that the house could be sold and the proceeds divided between Debtor and his former wife in accordance with their divorce judgment. (Tr. 40). However, on September 11, 1995, the state court dismissed the partition action because the parties agreed to list the property for sale with various real estate agents. (Tr. 43).

3. Debtor has two IRAs with Charles Schwab and Retirement Accounts, Incorporated, the former for approximately seven years, and the latter for approximately fifteen years. (Tr. 96). Debtor is also entitled to receive the proceeds from a Principal Mutual Annuity contract issued to George Washington Corporation on September 1, 1991. (Tr. 54–56).

4. Between 1980 and 1990, Debtor was the Chairman of the Board of Directors and Chief Executive Officer of George Washington Life Insurance Company (GW), and George Washington Corporation, GW's parent corporation. (Tr. 17). GW was domiciled and authorized to do business in the State of West Virginia. (*Id.*).

5. On June 3, 1991, the Circuit Court of Kanawha County of West Virginia entered an Order appointing Hanley C. Clark, Commissioner of Insurance for the State of West Virginia (Receiver), as the Receiver of the insolvent GW. (Receiver and Trustee's Ex. 3).

6. On September 3, 1992, Receiver sued Debtor and other directors of the GW, alleging, *inter alia*, breach of fiduciary duties to GW and professional malpractice. (Doc. 69). After a jury trial, a verdict was rendered on April 10, 1995, against the defendants. (Receiver and Trustee's Ex. 6). The West Virginia District Court subsequently entered the judgment for $6,198,591.34 on July 7, 1995. (*Id.*). Debtor was found fifteen (15%) percent at fault on both the breach of fiduciary duty and professional malpractice counts, and is jointly and severally liable for the full amount of the judgment. (*Id.*).

7. During the West Virginia litigation between Debtor and Receiver, Debtor owned two houses, the Ponte Vedra house and another house located on Laurel Road (the Laurel Road house), in Jacksonville, Florida. (Tr. 19–20). From 1980 to 1995, Debtor lived in the Laurel Road house. (Tr. 20–21). Debtor stated that the West Virginia District Court Final Judgment made him reevaluate his financial condition, and as a result of his declined income, he determined that he could no longer maintain two houses. (Tr. 57). On May 11, 1995, Debtor moved back into the Ponte Vedra house and purchased storage units at a Mini–Storage Warehouse in Jacksonville, where he stored some of his personal property. (Tr. 21, 30–31). Now, both Debtor and his former wife reside at the Ponte Vedra house. (Tr. 27). Debtor also testified that he recognized that there was a risk that the Ponte Vedra house could be subject to the West Virginia District Court judgment and wanted to take advantage of Florida's homestead provision. (Tr. 25–26). On May 17, 1995, Debtor sold the Laurel Road house for $75,000. (Tr. 32–33).

8. Debtor and his former wife want to sell the Ponte Vedra house, but find it difficult because of the litigation between Debtor and Receiver which places a cloud on the title. (Tr. 51–55, 65–68). On October 26, 1995, Debtor filed an action in the United States District Court in Jacksonville, Florida to quiet title, but there has been no activity in that proceeding since the commencement of this bankruptcy case. (Tr. 47). Debtor states he and his former wife will try to sell the Ponte Vedra house when the title is no longer clouded. (Tr. 54).

9. Debtor testified that if the Ponte Vedra house is sold, Debtor will use the proceeds to purchase another house and place the items he now has in storage in the new house. (Tr. 57).

10. On January 11, 1996, the West Virginia District Court entered a Memorandum Opinion and Order, directing Debtor to turn over to the Receiver the Deed to his Ponte Vedra house and liquidate and turn over to the Receiver the proceeds of his two IRAs. (Receiver and Trustee's Ex. 9).

11. On June 14, 1995, Debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Doc. 1). Schedule "C" of Debtor's petition lists the following properties as exempt:

| Property Description | Value of Exemption | Basis of Exemption |
| --- | --- | --- |
| Ponte Vedra house | $494,000 | Art. X, § 4, Fla. Const. |
| Household goods and Furnishings | $615 | Art. X, § 4, Fla. Const. |
| Cash on hand | $87 | Art. X, § 4, Fla. Const. |
| Bank account (Enterprise) | $8 | Art. X, § 4, Fla. Const. |
| Books, silver dollars | $90 | Art. X, § 4, Fla. Const. |
| Wearing Apparel | $100 | Art. X, § 4, Fla. Const. |
| Watch, Wedding ring | $100 | Art. X, § 4, Fla. Const. |
| 1986 Honda | $1,000 | Fla.Stat. § 222.25 |
| Schwab and Peak IRAs | $68,996 | Fla.Stat. § 222.21 |
| Principal Mutual Annuity | Not Stated | Fla.Stat. § 222.11 |
| Insurance Policies | $84,250 | Fla.Stat. § 222.11 |
| United States Army Retirement Pay | Not Stated | Not Stated. |

(Docs. 7, 25).

12. On August 29, 1996, Trustee objected to all of Debtor's claimed exemptions, except the retirement pay Debtor receives from the Army. (Doc. 21). Trustee objected on the following basis: (1) personal property was not designated with particularity and the value of the property exceeded the dollar amount to which Debtor was legally entitled; (2) the United States District Court for the Southern District of West Virginia ordered the Deed to the Ponte Vedra house and IRAs proceeds to be turned over for payment of the $6,197,591.34 judgment; and (3) Debtor's insurance policies or cash surrender value are not exempt within the meaning of Fla. Stat. § 222.11. (*Id.*). On September 26, 1996, the Trustee filed his Amended Objection to Debtor's Claim of Exemptions. (Doc.

33). In his amended pleading, Trustee raised additional grounds for his objections, contending that Debtor's Ponte Vedra house does not qualify as homestead under the Florida Constitution, and the homestead status of the Ponte Vedra house arose from fraudulent conversion, and is therefore not exempt under Fla.Stat. §§ 222.29 and 222.30. (*Id.*).

13. On September 6, 1996, Receiver objected to all of Debtor's claim of exemptions, except the retirement pay from the Army. (Doc. 24). Receiver objected on the same grounds as the Trustee. (*Id.*). On September 26, 1996, Receiver also filed his Amended Objections to Debtor's Claim of Exemptions, raising the same arguments as the Trustee. (Doc. 34).

14. On December 11, 1996, the Court held a hearing on the objections to the claimed exemptions. (Doc. 58). At the hearing, Receiver and Trustee agreed that their objections could be heard together and the same evidence could be used for both objections. (Tr. 6). Counsel for Receiver and Trustee also announced that objections to certain properties have been settled or withdrawn. (*Id.*). Receiver and Trustee withdrew their objections to Debtor's claim of exemptions of the cash surrender value of the insurance policies. (Tr. 7). Also, Receiver and Trustee settled their objections to Debtor's claim of exemptions as to household goods and furnishings, cash on hand, bank account (Enterprise), books, silver dollars, wearing apparel, watch, wedding ring and 1986 Honda. (*Id.*). Thus, this opinion addresses only the objections to the Ponte Vedra house, IRAs, and the Principal Mutual Annuity Contract.

## CONCLUSIONS OF LAW

] The Court is presented with the issue of whether to allow Debtor to claim as exempt his Ponte Vedra house, IRAs, and proceeds he receives from an annuity contract. A case commenced under Title 11 of the United States Code creates an estate which is comprised of all the property in which the debtor has a legal or equitable interest as of the date of the filing of the petition. 11 U.S.C. § 541(a). However, an individual is permitted to exempt property from the estate by claiming exemptions authorized by 11 U.S.C. § 522. *See In re Allen*, 203 B.R. 786, 791 (Bankr.M.D.Fla. 1996) (citing 11 U.S.C. § 522; *In re Colston*, 87 B.R. 193, 194 (Bankr.M.D.Fla.1988)). Section 522 allows a state to opt out of the federal exemptions provided for in subsection 522(d) and limit its residents to those exemptions provided under the state law. 11 U.S.C. § 522(b). The State of Florida has exercised this option. Fla.Stat. § 222.20 (1995); *In re Podzamsky*, 122 B.R. 596, 598 (Bankr.M.D.Fla.1990). Therefore, a debtor who is a Florida resident may claim exemptions pursuant to subsections 522(b)(2)(A)–(B), Article X, Section 4 of the Florida Constitution and Fla.Stat. ch. 222.

 The party objecting to the exemption has the burden of proving, by preponderance of the evidence, that the Debtor is not entitled to the exemptions claimed. *In re Rightmyer*, 156 B.R. 690, 692 (Bankr. M.D.Fla.1993). Once the objector has made a prima facie showing that the claimed exemptions should be disallowed, the burden then shifts to the Debtor to prove that the exemptions are legally valid. *Id.*

Here, the Receiver and Trustee contend that the Court should disallow Debtor's claimed exemptions of his Ponte Vedra house, IRAs, and annuity contract. The Court will now address each claim.

### A. The Ponte Vedra House

The Court will initially address whether Debtor may claim the Ponte Vedra house as exempt. The Receiver and Trustee state the following three grounds for disallowing Debtor's exemption of the Ponte Vedra house: (1) the house is not Debtor's homestead, (2) even if the house is Debtor's homestead, the homestead status resulted from a fraudulent conversion of a non-exempt asset to an exempt asset, and (3) the house is not property of the estate by virtue of the West Virginia District Court Order requiring Debtor to

turn over the deed to the Receiver to satisfy a judgment.

### 1. Homestead Status

**█5]** The Court must first determine whether the Ponte Vedra house is Debtor's homestead. Article X, section 4(a) of the Florida Constitution provides that:

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereto, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead, if located outside a municipality, to the extent of the one hundred and sixty acres of contiguous land and improvement thereon, which shall be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family[.]

Fla. Const. art. X, § 4. This Court has held that the Florida homestead is established when there is actual intention to live permanently in the place, coupled with actual use and occupancy. *See In re Brown,* 165 B.R. 512, 514 (Bankr.M.D.Fla.1994); *Teasdale v. Frederick (In re Frederick),* 183 B.R. 968, 970–71 (Bankr.M.D.Fla.1995). The intent to establish a homestead is evidenced by a debtor's specific acts toward creating a perma-

nent abode which are not contradicted by subsequent behavior of the debtor. *Id.* (citing *Semple v. Semple,* 82 Fla. 138, 89 So. 638 (1921)).

**█7]** In this case, the Receiver and Trustee contend that Debtor has no intention to reside at the Ponte Vedra house permanently because Debtor and his former wife plan to sell the house, and Debtor keeps most of his personal property in storage. Debtor testified that it was his intention, when he moved into the Ponte Vedra house, to reside there indefinitely. (Tr. 94). Simply because Debtor and his former wife have hopes of selling the house in the future does not eliminate its homestead status. Also, homestead status cannot be denied because Debtor keeps some of his personal property in a storage facility. Further, Debtor's intent to reside at the Ponte Vedra house permanently is coupled with him actually moving into the house on May 11, 1995, and his actual use of the house as his residence. Therefore, Debtor's claim of homestead exemption in the Ponte Vedra house is valid.

### 2. Homestead as an Instrument of Fraud

Having determined that the Debtor has a valid homestead exemption, the threshold issue is whether an otherwise valid homestead exemption can be disallowed upon a finding that Debtor converted the house from a nonexempt status to an exempt status to hinder, delay or defraud creditors. The Receiver and Trustee relied on Fla.Stat. § 222.30(1)–(2) [1] to support their contention that the Court should disallow Debtor's homestead exemption. In so doing, they cited to *In re Thomas,* 172 B.R. 673 (Bankr.M.D.Fla.1994). In *Thomas,* a sister bankruptcy court found

---

**1.** Section 222.30 of the Florida Statutes provides, in relevant part, that:

(1) As used in this section, "conversion" means every mode, direct or indirect, absolute or conditional, of changing or disposing of an asset, such that the products or proceeds of the asset become immune or exempt by law from claims of creditors of the debtor and the product or proceeds of the asset remain property of the debtor. The definitions of chapter 726 apply to this section unless the application of a definition would be unreasonable.

(2) Any conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.

Fla.Stat. § 222.30(1)–(2) (1996).

that proceeds from the sale of a non-exempt automobile went towards mortgage payments of an exempt homestead. *Id.* at 674. Relying on Fla.Stat. § 222.29 [2]–.30, the court held that the debtors' conversion of non-exempt assets to exempt assets was a fraudulent conversion which precludes homestead exemption in the amount of the conversion. *Id.* The court further stated that Fla.Stat. § 222.29–.30 bar homestead exemptions resulting from fraudulent asset conversions. *Id.*

Yet, other courts have held that a homestead exemption will not be disallowed even upon a finding of fraud under Fla.Stat. 222.30. *See, e.g., In re. Clements,* 194 B.R. 923, 927 (Bankr.M.D.Fla.1996). The rationale for this approach is that the law lacks any authority that would permit disallowing an exemption derived from the Florida Constitution. *Id. See also Meininger v. Miller (In re Miller),* 188 B.R. 302, 307–08 (Bankr.M.D.Fla.1995) (holding that conversion of non-exempt property to a homestead does not take away a debtor's homestead exemption because a homestead exemption is protected by the Florida Constitution).

█] However, in *Brown* and *Frederick,* this Court has plainly stated that although the homestead exemption must be liberally construed, the Court must prevent the exemption from becoming an instrument of fraud. *Brown,* 165 B.R. at 514; *Frederick,* 183 B.R. at 970–71. So, if the objectors can show that the exemption is being used as an instrument of fraud, then the exemption would be disallowed. The Court does note, however, that it did not rely on Fla.Stat. 222.30 in *Brown* or *Frederick,* and is not doing so here.

█] To determine whether Debtor is using his homestead as an instrument of fraud, the Court now turns to its previous holdings, where it recognized that the con-

version of non-exempt assets into exempt assets is not fraudulent per se; however, when the conversion is done with intent to defeat the interests of creditors, it may be sufficient to deny a debtor's claim of exemption. *In re Mackey,* 158 B.R. 509, 512 (Bankr.M.D.Fla.1993); *In re Elliott,* 79 B.R. 944, 946 (Bankr.M.D.Fla.1987). To prevail, the objector must show that Debtor converted non-exempt assets to exempt assets with intent to hinder, delay or defraud creditors. *Id.* The intent to hinder, delay, or defraud creditors may be inferred from extrinsic evidence, and two important indicators of fraudulent intent are the timing of the conversion from non-exempt to exempt property and any attempts by debtor to conceal the conversion. *Mackey,* 158 B.R. at 512; *Elliott,* 79 B.R. at 946.

█] Here, Receiver and Trustee suggest that Debtor switched homesteads simply to keep the approximately $500,000 equity in the house, out of the hands of his creditors. (Doc. 69). Debtor, however, responds that he simply could not afford two homes due to his declined income, and consequently chose the Ponte Vedra house as his homestead over the Laurel Street house. (Doc. 68). The timing of creating homestead status in the Ponte Vedra house does not support fraud because Debtor moved into the house over a year before filing his Chapter 7 petition. Debtor moved into the Ponte Vedra house on May 11, 1995 and filed his bankruptcy petition on June 14, 1996. Also, Debtor made no attempt to conceal his actions. Therefore, the two important indicators of fraud, timing and concealing, are not in the objectors' favor and do not show that Debtor intended to defraud his creditor when he moved from the Laurel Road house to the Ponte Vedra house. Receiver and Trustee have not met their burden in showing that the exemption should be disallowed upon the basis of fraudulent conversion of non-exempt to exempt asset. Thus, the objection should be overruled and the exemption should be allowed.

---

**2.** Section 222.29 of the Florida Statutes provides, in relevant part, that:

An exemption from attachment, garnishment, or legal process provided by this chapter is not

effective if it results from a fraudulent transfer or conveyance as provided in chapter 726. Fla.Stat. § 222.29 (1996).

### 3. Ponte Vedra House as Property of the Estate

2] Next, Receiver and Trustee argue that Debtor cannot claim the Ponte Vedra house as exempt based on the following two reasons: (1) The West Virginia District Court ordered Debtor to turn over the deed of the Ponte Vedra house to the Receiver, and consequently, Debtor has no equitable interest in the house pursuant to 11 U.S.C. 541(d); and (2) Collateral Estoppel precludes Debtor from exempting the Ponte Vedra house because the West Virginia District Court Order held that the Ponte Vedra house is not exempt under West Virginia law. (Doc. 69, at 21–24). This Court has recently rendered a decision on these identical issues, holding that the same West Virginia District Court's Order at issue in the present case does not invalidate Debtor's exemption rights under Florida law. See Allen, 203 B.R. at 793 (providing a more detailed discussion on these issues). The Court concludes that, for the reasons stated in Allen, the Receiver's and Trustee's objections should be overruled and Debtor's homestead exemption in the Ponte Vedra house should be allowed.

### B. Individual Retirement Accounts

] Again, Receiver and Trustee argue that Debtor cannot claim the IRAs as exempt based on the following two reasons: (1) The West Virginia District Court ordered Debtor liquidate the IRAs and turn over the proceeds to the Receiver, and consequently, Debtor has no equitable interest in the IRAs pursuant to 11 U.S.C. 541(d); and (2) Collateral estoppel precludes Debtor from exempting the IRAs because the West Virginia District Court Order held that they were not exempt under West Virginia law. (Doc. 69, at 21–24). This Court has recently rendered a decision on these identical issues, holding that the same West Virginia District Court's Order at issue in the present case does not invalidate Debtor's exemption rights under Florida law. See Allen, 203 B.R. at 793 (providing a more detailed discussion on these issues). The Court concludes that, for the reasons stated in Allen, the Receiver's

and Trustee's objections should be overruled and Debtor's claim of exemptions as to the IRAs is allowed.

### C. Proceeds from the Principal Mutual Annuity Contract

 Receiver and Trustee further contend that Debtor's claim of exemption of the Principal Mutual Annuity contract should be disallowed because the contract must be issued to citizens or residents of the state of Florida pursuant to Fla.Stat. § 222.14. Section 222.14 provides that:

> The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon what ever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.

Fla.Stat. § 222.14 (1995). This Court has previously stated that "[e]xemptions under state law rest on consideration of public policy and should be liberally construed in favor of the debtor," and that "there is no requirement that the annuity itself be issued to a resident of this state [because t]he statute merely requires that the proceeds of the annuity contracts be issued to residents of this state." In re Benedict, 88 B.R. 390, 392–93 (Bankr.M.D.Fla.1988) (citations omitted) (emphasis in the original).

In this case, the proceeds of the annuity will be issued to a Florida resident because Debtor is a Florida resident. Therefore, Receiver's and Trustee's objections are overruled and Debtor's exemption is allowed as to the Principal Mutual Annuity.

### CONCLUSION

Receiver's and Trustee's objections to Debtor's claim of exemptions as to the Ponte

Vedra house, IRAs, and the proceeds of the annuity contract are overruled and the exemptions are allowed. The Court will enter an Order consistent with these Findings of Fact and Conclusions of Law.