**In re Larry George RIGHTMYER, Debtor.**

**Bankruptcy No. 92–2344–8P7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 6, 1993.

Malka Isaak, Tampa, FL, for debtor.

Walt Logan, St. Petersburg, FL, for John Nash.

Leo H. Meirose, Jr., Tampa, FL, for Charles Goldsmith.

Lauren P. Johnson, trustee.

Jay B. Verona, St. Petersburg, FL, for trustee.

## ORDER ON OBJECTION TO CLAIM OF EXEMPTIONS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matters under consideration are Objections to Claim of Exemptions of Larry G. Rightmyer (Debtor). The Objections are interposed by Lauren Johnson (Trustee), Charles B. Goldsmith (Goldsmith), and John Nash (Nash), who challenge the Debtor's right to claim a residence located at 408 Eighth Avenue, Tierra Verde, Florida as exempt homestead pursuant to Article X, § 4 of the Florida Constitution. It is the Trustee's contention that the Debtor, with the specific intent to defraud his creditors, purchased his exempt homestead with funds accumulated from several sales of non-exempt assets. In addition, Goldsmith and Nash also object to the Debtor's right to claim as exempt certain personal properties, on the ground that the value of the personal properties claimed as exempt exceeds $1,000.00, the amount allowed by Article X, § 4 of the Florida Constitution. In due course, all objections were set for final evidentiary hearing and heard. The Trustee, Goldsmith and Nash claim that the following pre-petition events evidence the Debtors efforts to sell his non-exempt assets and use the cash from those sales for the purchase of his exempt homestead.

The Debtor, a practicing, albeit no longer active, attorney, withdrew $100,000.00 from his trust account maintained by him for his client, Goldsmith, without the client's knowledge or permission. The Debtor used the funds to purchase an undeveloped parcel of land in St. Petersburg Beach known as Fountain Square. On June 6, 1985, the Debtor obtained a construction loan from Financial Federal Savings & Loan (S & L) to finance the development of the Fountain Square Property. Subsequently, the Debtor defaulted on the loan and on April 6, 1987 the S & L foreclosed its mortgage on Fountain Square, sold the property and obtained a deficiency judgment against the Debtor in the approximate amount of $540,000.00.

On June 25, 1988, the Debtor made his first inquiry into purchasing a lot in Tierra

Verde on which he planned to build his future homestead. On October 3, 1988, October 11, 1988, and November 4, 1988, the Debtor closed on the sale of three other pieces of property which he owned. He received $230,951.73 from these sales and deposited the sale proceeds into his trust account rather than his general operating account. A few weeks later, on November 25, 1988, the Debtor entered into a contract to purchase, for $226,000.00, the lot in Tierra Verde, Florida, on which he later constructed the residence involved in this controversy. On December 7, 1988, the Debtor sold his 28 foot Irwin Sailboat and received net proceeds of $9,500.00. The proceeds of this sale were also deposited into his trust account. On January 10, 1989, the Debtor closed on the purchase of the Tierra Verde lot and paid $219,163.07 by a check drawn on his trust account. There is evidence in this record to warrant the finding that during the time of the sales of the three lots in 1988 and the sale of the sailboat, the Debtor was not faced with any legal collection actions by any creditors. There is also no evidence that the Debtor had any meaningful liabilities at that time or prior to paying anything toward the construction of his residence which he now claims as exempt, with the exception of the deficiency judgment obtained against him by the S & L in the amount of $540,000.00, which obligation he ultimately settled for $20,000.00 on May 9, 1989. It was not until April 22, 1991, when the Debtor's former client filed a legal malpractice suit against him, that the Debtor faced a lawsuit. This suit is still pending.

On January 26, 1989, the Debtor entered into a letter of agreement regarding the construction of the home on the Tierra Verde lot. The construction cost agreed upon was $294,294.00. Thus, the total cost of his residence now claimed as his homestead totalled $520,294.00. It was contemplated that construction of the home would take approximately 7 months. On February 2, 1989, the Debtor obtained a loan from Goldsmith in the amount of $75,000.00, and executed two promissory notes payable on demand to Goldsmith, one for $75,000.00 and the other for the original $100,000.00 taken by the Debtor. The $100,000 note was backdated to February 28, 1985. On February 3, 1989, the Debtor paid $5,000.00 towards the construction of his claimed homestead.

On May 11, 1989, the Debtor closed on the sale of his former homestead, receiving net proceeds of $237,109.49, which were deposited into his office account. In addition, the Debtor also closed on the sale of his Bonnie Bay townhouse, receiving net proceeds of $7,364.44. On June 23, 1989, the Debtor paid $198,648.00 towards the construction of the residence on the Tierra Verde lot. Between July 18, 1989 and August 31, 1989, the Debtor sold 24,000 shares of Anchor Bank stock for a total of $40,576.60. It is presumed that these funds were also used toward the construction of the Debtor's homestead.

The Debtor filed his voluntary Petition for Relief under Chapter 7 on February 21, 1992. In his Schedule C Debtor claimed as exempt his residence located at 408 8th Avenue, Tierra Verde, Florida 33715, as his homestead.

These are the facts upon which the Trustee and creditors rely in making their objections. It is well established law that it is the objecting party's burden to prove, by a preponderance of the evidence, that the Debtor is not entitled to the exemption claimed. *In re Ehnle*, 124 B.R. 361 (Bankr.M.D.Fla.1991); *In re Barlock*, 121 B.R. 13 (Bankr.N.D.Ohio 1990). Once the objecting party has made a prima facie showing, the burden shifts to the Debtor to prove his entitlement to the exemption. *In re Welch*, 115 B.R. 374 (Bankr.M.D.Fla. 1990). This Court is satisfied that the objecting parties have failed to established a prima facie showing, with the requisite degree of proof, which would warrant the conclusion that the Debtor has forfeited the exemption to which he would otherwise be entitled because he converted non-exempt assets into cash used to purchase his exempt homestead. The objecting parties have failed to show any fraudulent intent in the conversion of nonexempt assets into exempt assets. *In re Schwarb*, 150 B.R. 470 (Bankr.M.D.Fla.1992). In fact, many

of the Debtor's transactions were completed years prior to the bankruptcy filing and years prior to time when the creditors' claims arose. The creditors have also failed to establish that the value of the personal property claimed as exempt exceeds the $1,000.00 cap fixed by Article X § 4(a)(2) of the Florida Constitution because they have failed to put forward any evidence as to the value of these items. Therefore, the objections are overruled and the exemption is allowed as filed. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objections interposed by Lauren Johnson, Trustee, Charles B. Goldsmith, and John Nash are overruled and the exemptions claimed by the Debtor are allowed as filed.

DONE AND ORDERED.