**In re Robert W. FREEMAN, Debtor.**

**Bankruptcy No. 98–9384–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 29, 1999.

Edward P. Jackson, Jacksonville, FL, for Debtor.

Robert L. Young, Orlando, FL, for J.G. Wentworth.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Robert W. Freeman's Motion for Sanctions filed against J.G. Wentworth, S.S.C., L.P., for failing to release a Writ of Garnishment on annuity payments Debtor alleges are property of the estate pursuant to 11 U.S.C. § 541. After a hearing on January 7, 1999, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The relevant facts are undisputed. In 1982, Robert W. Freeman ("Debtor") entered into a settlement of a claim resulting from an accident that killed his wife and injured Debtor and his children. The settlement was composed of immediate payments to or for the benefit of Debtor and his family, together with future pay-ments to be made periodically. This form of settlement is often referred to as a "structured settlement".[1]

2. In order to meet its settlement obligation to Debtor, the defendant purchased an annuity from First Colony Life Insurance Company ("First Colony") that provided for payment of certain periodic payments for life. Debtor was listed as the beneficiary.

3. For ten years Debtor received the periodic payments from First Colony pursuant to the settlement agreement. In 1998, needing some immediate funds, Debtor entered into an agreement with Wentworth dated April 28, 1998 ("Purchase Agreement") whereby Debtor was to receive a lump sum payment in exchange for the remaining payments due under the settlement agreement. (Wentworth's Ex. 1.) Wentworth is in the business of purchasing structured settlement payments. The following provisions of the Purchase Agreement are relevant to the issue before the Court:

This is a Purchase Agreement.

### BACKGROUND OF THIS AGREEMENT

3. A list of the payments being sold under this Agreement is attached to this Agreement as Exhibit "A".

4. You desire to sell and assign to Us all of Your rights to receive all or a portion of the payments under the Release, as described on Exhibit "A", all of the other rights You have under the Release and the other rights as described in Section 1(a) below. We desire to purchase all of Your rights and benefits, on the terms and under the conditions described in this Agreement.

You and we agree as follows:

*Purchase and Sale*

---

1. Generally, a structured settlement agreement releases the defendant obligor from liability in consideration for the agreement to make periodic payments to the claimant over time. The motivation for entering into such an arrangement is not only because of the economics of the transaction to the obligor, but also because of tax benefits which can inure to all parties. *See Western United Life Assur. Co. v. Hayden,* 64 F.3d 833 (3d Cir. 1995) for a discussion of structured settlements.

a. You now sell, transfer and assign to Us all of Your rights in the "Assigned Assets". As used in this Agreement, the term "Assigned Assets" means (1) all of Your rights to receive all of a portion of the Payments under the Release, (2) the Payments listed in Exhibit "A", (3) the right to receive all or a portion of the "qualified funding asset" defined in the Qualified Assignment described in Exhibit "C" and any interest in the proceeds of the qualified funding asset related to the Assigned Assets, (4) all of Your other rights (but none of Your obligations) under the Release and the Qualified Assignment related to the Assigned Assets, and (5) all of Your present or future rights to sell, assign, transfer, cause an early determination of, modify, waive, settle, or receive value for, the Payments on Exhibit "A". By Our signing this Agreement, We are hereby purchasing and accepting the sale and assignment of all of the Assigned Assets described above.

b. The purchase price is NINETY TWO THOUSAND SEVEN HUNDRED SIXTY–EIGHT AND ⁸²/₁₀₀ DOLLARS ($92,768.82) (the "Purchase Price").

\* \* \*

2. ... The transaction described in this Agreement is intended to constitute a purchase and sale of all the Assigned Assets.

\* \* \*

4. a. You own (and are selling and assigning to Us under this Agreement) all the Assigned Assets, free and clear of all claims, liens, charges, security interests, encumbrances, and agreements of any nature....

\* \* \*

f. You have valid reasons for selling Your interest in the Assigned Assets rather than obtaining a loan with the Assigned Assets as collateral, and You agree that the transaction set forth in this Agreement is not a loan or other financing transaction.

g. This Agreement is a valid sale, transfer and assignment to Us of the Assigned Assets.

k. You have not before the date of this Agreement, sold or assigned Your right to the Assigned Assets or any part of the Assigned Assets.

*Exhibit A*

We are hereby purchasing from You under the Annuity: 120 monthly payments of $1,667.00 each, beginning on 4/15/98 and ending on 3/15/2008.

(Wentworth's Ex. 1.)

4. In addition to the execution of the Purchase Agreement, Wentworth conducted an exit interview with the Debtor by telephone on June 2, 1998. (Wentworth's Ex. 2.) The following portions of that interview are relevant:

> Fogle: All right. Now what is your reason for selling your annuity payments?
>
> \* \* \*
>
> Freeman: Well, I needed some money. I wanted to get me a house and I got to have another operation.
>
> Fogle: Have you ever sold any of your annuity payments before?
>
> Freeman: Never have.
>
> Fogle: Do you understand that you are no longer entitled to the payments that you sold?
>
> Freeman: Correct.
>
> Fogle: Do you also understand that this is a sale of those payments and not a loan?
>
> Freeman: Correct.

5. In June, 1998, the net proceeds of this sale, totaling $87,767.82, were wired to Debtor's attorney who then deducted certain expenses and paid the balance to Debtor. (Wentworth's Ex. 4.)

6. Pursuant to the requirements of the Purchase Agreement, Debtor sent a letter to Life Colony directing it to send future payments under the annuity to a new address. This address was maintained by

Wentworth for the purpose of receiving these and other structured settlement payments purchased in the ordinary course of business.

7. Life Colony refused Debtor's request to change the address. Debtor continued to receive annuity payments at his address. However, rather than turning over the periodic payments to Wentworth, Debtor retained possession of these payments.

8. Subsequently, Wentworth notified Debtor that he had breached his obligations to Wentworth under the Purchase Agreement.

9. Accordingly, Wentworth obtained a Confession of Judgment, as authorized by the Purchase Agreement, to get control of the property through the issuance of a Writ of Garnishment. (Debtor's Ex. 2.) The Writ was served on the Life Colony for the purpose of collecting the funds Wentworth claimed it obtained pursuant to the April, 1998, Purchase Agreement.

10. There is disputed testimony regarding what occurred when Debtor learned Wentworth was taking action to get control of the property. Debtor testified that he returned the bulk, but not all, of the sales proceeds by sending cash to Wentworth in a brown envelope mailed from a post office in Waycross, Georgia.[2] Wentworth's representative, however, testified that no cash funds were received from any source in its Pennsylvania office.

11. On October 30, 1998, Debtor filed a Chapter 7 petition with this Court. On his Schedule C, Debtor listed the Life Colony annuity as exempt. (Doc. 1.) Debtor then requested that the Writ of Garnishment be released, but Wentworth took no further action to release the Writ. Consequently, Debtor filed a Motion for Sanctions against Wentworth for violating the automatic

stay. (Doc. 7.) A hearing on the motion was held on January 7, 1999. (Doc. 17.)

12. Subsequent to the issuance of the Writ of Garnishment and the bankruptcy filing, Life Colony has retained possession of all payments due to be paid out pursuant to the annuity. Neither Debtor nor Wentworth has received any of those funds.

### CONCLUSIONS OF LAW

■ When a petition in bankruptcy is filed, all legal or equitable interests in the debtor's property become property of the estate. 11 U.S.C. § 541 (1999); *In re Dudley D. Allen,* 217 B.R. 945, (Bankr. M.D.Fla.1998). A debtor's interest in property for purposes of determining property of a bankruptcy estate is determined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The automatic stay operates to enjoin a creditor from attempting to possess or exercise control over property of a bankruptcy estate once a petition has been filed. 11 U.S.C. § 362 (1999).

The Court first notes that Wentworth does not contend that Debtor's structured settlement agreement with Life Colony does not qualify as an annuity under Florida law. (Doc. 25.); *see* FLA.STAT.ANN. § 222.14 (providing proceeds of annuities exempt under Florida law). Additionally, the Court notes that Debtor does not assert that the language contained in the April 28, 1998, Purchase Agreement is ambiguous, or not that of an assignment. (Doc. 26.) Rather, Debtor argues that because the Life Colony structured settlement agreement contains an anti-assignment clause, the Purchase Agreement did not constitute an effective assignment,[3] the annuity proceeds are property of the bankruptcy estate, and thus, Wentworth's fail-

---

**2.** The Court finds Debtor's testimony incredible.

**3.** Neither party raises the issue of what state's law governs. Therefore, this Court looks to

Florida law, the law of the forum state, in determining whether the parties executed an effective assignment.

ure to release the Writ of Garnishment violated the automatic stay. Wentworth contends that because the assignment was valid, it, rather than Debtor's estate, possesses the right to receive the monthly payments.

Therefore, the Court's inquiry is limited to determining whether Debtor validly assigned his interest in the annuity to Wentworth. If the assignment is valid, Debtor did not own an interest in the annuity at the time he filed his bankruptcy petition. If the assignment was invalid, Debtor's interest in the annuity became property of the estate upon the commencement of the case, and thus, Wentworth's failure to release the Writ of Garnishment is the subject of potential sanctions for violating the automatic stay.[4] *See* 11 U.S.C. § 362 (1999).

■■■ The Supreme Court of Florida has held that contracts are assignable unless the assignment is prohibited by statute, is contrary to public policy, or where assignments are forbidden by the terms of the contract. *Hall v. O'Neil Turpentine Co.*, 56 Fla. 324, 47 So. 609 (Fla.1908); *Brunswick Corp. v. Creel*, 471 So.2d 617 (Fla.5th DCA 1985); *Kitsos v. Stanford*, 291 So.2d 632 (Fla.3d DCA 1974), *cert. denied*, 307 So.2d 447 (Fla.1974). Also, it is clear that contractual provisions against assignability are generally enforceable in Florida. *Troup v. Meyer*, 116 So.2d 467 (Fla.3d DCA 1959).

Debtor seeks to convince this Court that the April, 1998, Purchase Agreement is void because his right to receive payments under the annuity was nonassignable. However, based on the evidence presented, Debtor's argument fails.

Debtor initially brings to the Court's attention that there are no statutory provisions in Florida that invalidate non-assignability clauses in annuities. Debtor also cites several cases that uphold contractual prohibitions against assignments. (Doc. 26.) Debtor argues that since the primary purposes of structured settlements are to protect settling plaintiffs from their inability to manage lump sum payments and to afford the parties favorable tax treatment, restrictions on assignments serve a valid public purpose. (Doc. 26.) *See* 26 U.S.C. § 130 (1999); Fla.Stat.Ann. § 679.318 (1999). The Court is well aware of the purposes behind structured settlements and nonassignability clauses.[5]

■■ However, the only evidence presented by Debtor in regard to his lack of authority to assign the periodic payments is a letter dated May 27, 1998, from Connie Smith, Annuity Client Services Representative of First Colony, addressed to Debtor. The following statement is made in the second paragraph of the Letter:

You and/or your representative were signatories to the Settlement Agreement and either signed or approved of the Qualified Assignment, both of which contain provisions prohibiting you from accelerating, anticipating, selling, assigning or encumbering any periodic payment owed to you.

(Debtor's Ex. 1.)

Debtor, however, failed to introduce into evidence the Settlement Agreement or the Qualified Assignment that is referred to in First Colony's letter. Anti-assignment language does not in and of itself prohibit the assignment of one's right to receive periodic payments under a settlement agreement or annuity.[6] Therefore, the

---

**4.** In light of this Court's holding, it need not and does not reach these arguments.

**5.** *See supra* note 1, and accompanying text.

**6.** One recognized commentator has pointed out that a contractual provision forbidding or restricting an assignment of rights under the contract may take any one of at least three

distinct forms. J. Murray, Jr., *Murray on Contracts* § 306, at 623 (2d rev. ed.1974); G. Grismore, *Effect of a Restriction on Assignment in a Contract*, 31 Mich.L.Rev. 299, 299–300 (1933). Only one of these forms reveals the intent necessary to preclude the power to assign or to cause an assignment violative of contractual conditions to be wholly void. Such a clause must contain express provi-

Court must discern whether this letter proves that the alleged anti-assignment clause forbids only the assignment of a party's "rights" under a contract, or also precludes the assignment of a party's "privileges". As the Third District Court of Appeal of Florida has noted parenthetically, "[t]he law draws a distinction ... between assignment of performance due under a contract and assignment of the right to receive contractual payments." *Cordis Corp. v. Sonics Int'l, Inc.*, 427 So.2d 782, 783 (Fla.3d DCA 1983) (quoting *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293, 1297 (5th Cir.1972)). It is generally recognized that the right to receive monies due or to become due under an existing contract may be assigned. *See, e.g., Aldana v. Colonial Palms Plaza, Ltd.*, 591 So.2d 953 (Fla.3d DCA 1991); *Miller v. Wells Fargo Bank Intern. Corp.*, 406 F.Supp. 452 (S.D.N.Y.1975), *aff'd*, 540 F.2d 548 (2d Cir.1976); *In re Martin*, 117 B.R. 243, 249–50 (Bankr.N.D.Tex.1990); *Village of Westville v. Loitz Bros. Const. Co., Inc.*, 165 Ill.App.3d 338, 116 Ill.Dec. 447, 519 N.E.2d 37 (1988).

The law in this area is summarized in the Restatement (Second), Contracts § 322(1) as follows:

(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

■ As a rule of construction, in other words, a prohibition against assignment of the contract will prevent assignment of contractual duties, but does not prevent assignment of the right to receive payments due, unless the circumstances indicate the contrary.[7] Therefore, "[a] contract term prohibiting assignment of rights under the contract ... gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective...." *Cedar Point Apartments, Ltd. v. Ceder Point Inv. Corp.*, 693 F.2d 748, 754 (8th Cir. 1982).

■ In essence, the anti-assignment provision must eliminate both Debtor's "power" to assign as well as his "right" to assign the contract or rights before this Court will invalidate the assignment. *See, e.g., University Mews Associates v. Jeanmarie*, 122 Misc.2d 434, 471 N.Y.S.2d 457, 461 (N.Y.Sup.Ct.1983) (providing that an anti-assignment provision must "contain express provisions that any assignment shall be void or invalid" in order to preclude the power to assign or cause an assignment contrary to contractual provi-

sions to the effect that any assignment shall be void or that any assignment shall be invalid if not made in a certain specified way. *See Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 450, 103 N.E.2d 891, 892–93 (1952); J. Murray, Jr., supra, § 306, at 623; G. Grismore, supra, at 299–300; *cf. Silliman v. Chrisman*, 584 S.W.2d 441, 447 (Mo.App. 1979); *Portland Elec. and Plumbing Co. v. City of Vancouver*, 29 Wash.App. 292, 294, 627 P.2d 1350, 1351 & n. 1 (1981). If the contract provides that an assignment will make the contract void, the assignment is effective but the nonassigning party has the right to avoid the contract for breach of a condition precedent to his duty to perform. J. Murray, Jr., supra, § 306, at 623. On the other hand, the contract may contain only a promise by one or both parties to refrain from assigning or a promise to assign only under certain conditions. The promise creates a duty in the promisor but its breach does not

render the assignment ineffective. *Hanigan v. Wheeler*, 19 Ariz.App. 49, 52, 504 P.2d 972, 975 (1972); *Murray First Thrift and Loan Co. v. Stevenson*, 534 P.2d 909, 911 (Utah 1975). If a breach of such a promise goes to the "root" or "essence" of the contract, the other party would have the option to avoid the contract on the basis of breach of a constructive condition. If such breach is not material, however, the other party merely would have an action for specific performance or for damages for breach of contract. *See* Restatement (Second) of Contracts §§ 225, 237, 241 (1981).

7. An example of the latter situation can be found in *Troup v. Meyer*, 116 So.2d 467, 469 (Fla. 3d DCA 1959), in which the contract, by express language, prohibited an insurance agent from assigning commissions due him.

sions to be void); *see also United Pacific Life Ins. Co. v. Garrison,* 1993 WL 330995 (Tenn.Ct.App.1993) (recognizing, under Tennessee law, anti-assignment clauses in structured settlements are for the benefit of the obligor, not the claimant); *Paccom Leasing Corp. v. E.I. du Pont de Nemours & Co.,* 1991 WL 226775 (D.Del.1991). Additionally, numerous cases support the proposition that an assignee can maintain an action to enforce the assignment as against the assignor even in the presence of an anti-assignment clause. *See, e.g., Garrison,* 1993 WL 330995 (holding that an assignment of a claimant's rights to monies due or to become due is valid as against the assignor notwithstanding a provision in the settlement agreement specifically prohibiting such an assignment); *Portuguese–American Bank v. Welles,* 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116 (1916); *Frank Sullivan Co. v. Midwest Sheet Metal Works,* 335 F.2d 33, 39 (8th Cir.1964).

This Court finds it necessary to consider the Settlement Agreement and/or the Qualified Assignment in order to determine whether or not Debtor's right to receive payments under the annuity contract was assignable. Given the lack of evidence set forth by Debtor, this Court finds the Purchase Agreement executed by Debtor in April, 1998, constituted an effective legal assignment by Debtor of his right to receive the periodic payments from the annuity. The Court realizes there is a pending case under advisement on Wentworth's Objection to Debtor's Exemptions that concerns whether the annuity proceeds are property of Debtor's estate, however, the Court will not make a ruling on that objection at this time.

### CONCLUSION

In the present case, Debtor has failed to set forth evidence which establishes that Debtor did not have the power to assign his rights under the Settlement Agreement or the annuity purchased to effectuate that settlement. Thus, the Court holds that Debtor no longer has a right to re-

ceive these payments, and thus, the payment stream is not property of the estate. Therefore, Wentworth's failure to release the Writ of Garnishment issued to Life Colony did not violate the automatic stay. Accordingly, Debtor's Motion for Sanctions is not well taken and is denied. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.