**In re Robert W. FREEMAN, Debtor.**

**Bankruptcy No. 98–9384–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 28, 1999.

However, Plaintiff admits she pays well over the minimum required on all her credit cards.

Robert L. Young, Orlando, FL, for JG Wentworth.

Edward P. Jackson, Jax, FL, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on the Objection of J.G. Wentworth S.S.C. Limited Partnership ("Wentworth") to Robert W. Freeman's Claim of Exemption. After a hearing on February 25, 1999, and upon the evidence presented at the hearing on Debtor's Motion for Sanctions against Wentworth on January 7, 1999,[1] the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT[2]

1. The relevant facts are undisputed. In 1982, Robert W. Freeman ("Debtor") entered into a settlement of a claim resulting from an accident that killed his wife and injured Debtor and his children. The settlement was composed of immediate payments to or for the benefit of Debtor and his family, together with future payments to be made periodically. This form of settlement is often referred to as a "structured settlement".[3]

2. In order to meet its settlement obligation to Debtor, the defendant purchased an annuity from First Colony Life Insurance Company ("First Colony") that provided for payment of certain periodic payments for life. Debtor was listed as the beneficiary.

3. For ten years Debtor received the periodic payments from First Colony pursuant to the settlement agreement. In 1998, needing some immediate funds, Debtor entered into an agreement with Wentworth dated April 28, 1998 ("Purchase Agreement") whereby Debtor was to receive a lump sum payment in exchange for the remaining payments due under the

---

1. The parties orally stipulated at the February 25, 1999, hearing that the Court may utilize the evidence previously presented on Debtor's Motion for Sanctions for purposes of deciding Wentworth's Objection to Debtor's Claim of Exemption.

2. *See supra* note 1. The Court adopts the Findings of Fact as enumerated in its decision in *In re Freeman,* 232 B.R. 497, 498–501 (Bankr. M.D.Fla.1999).

3. Generally, a structured settlement agreement releases the defendant obligor from liability in consideration for the agreement to make periodic payments to the claimant over time. The motivation for entering into such an arrangement is not only because of the economics of the transaction to the obligor, but also because of tax benefits which can inure to all parties. *See Western United Life Assur. Co. v. Hayden,* 64 F.3d 833 (3d Cir. 1995) for a discussion of structured settlements.

settlement agreement. (Wentworth's Ex. 1.) Wentworth is in the business of purchasing structured settlement payments. The following provisions of the Purchase Agreement are relevant to the issue before the Court:

This is a Purchase Agreement.

*BACKGROUND OF THIS AGREEMENT*

3. A list of the payments being sold under this Agreement is attached to this Agreement as Exhibit "A".

4. You desire to sell and assign to Us all of Your rights to receive all or a portion of the payments under the Release, as described on Exhibit "A", all of the other rights You have under the Release and the other rights as described in Section 1(a) below. We desire to purchase all of Your rights and benefits, on the terms and under the conditions described in this Agreement.

You and we agree as follows:

*Purchase and Sale*

a. You now sell, transfer and assign to Us all of Your rights in the "Assigned Assets". As used in this Agreement, the term "Assigned Assets" means (1) all of Your rights to receive all of a portion of the Payments under the Release, (2) the Payments listed in Exhibit "A", (3) the right to receive all or a portion of the "qualified funding asset" defined in the Qualified Assignment described in Exhibit "C" and any interest in the proceeds of the qualified funding asset related to the Assigned Assets, (4) all of Your other rights (but none of Your obligations) under the Release and the Qualified Assignment related to the Assigned Assets, and (5) all of Your present or future rights to sell, assign, transfer, cause an early determination of, modify, waive, settle, or receive value for, the Payments on Exhibit "A". By Our signing this Agreement, We are hereby purchasing and accepting the sale and assignment of all of the Assigned Assets described above.

b. The purchase price is NINETY TWO THOUSAND SEVEN HUNDRED SIXTY–EIGHT AND $^{82}/_{100}$ DOLLARS ($92,768.82) (the "Purchase Price").

\* \* \*

2. . . . The transaction described in this Agreement is intended to constitute a purchase and sale of all the Assigned Assets.

\* \* \*

4. a. You own (and are selling and assigning to Us under this Agreement) all the Assigned Assets, free and clear of all claims, liens, charges, security interests, encumbrances, and agreements of any nature. . . .

\* \* \*

f. You have valid reasons for selling Your interest in the Assigned Assets rather than obtaining a loan with the Assigned Assets as collateral, and You agree that the transaction set forth in this Agreement is not a loan or other financing transaction.

g. This Agreement is a valid sale, transfer and assignment to Us of the Assigned Assets.

k. You have not before the date of this Agreement, sold or assigned Your right to the Assigned Assets or any part of the Assigned Assets.

*Exhibit A*

We are hereby purchasing from You under the Annuity:

120 monthly payments of $1,667.00 each, beginning on 4/15/98 and ending on 3/15/2008.

(Wentworth's Ex. 1.)

4. In addition to the execution of the Purchase Agreement, Wentworth conducted an exit interview with the Debtor by telephone on June 2, 1998. (Wentworth's Ex. 2.) The following portions of that interview are relevant:

> Fogle: All right. Now what is your reason for selling your annuity payments?

***

Freeman: Well, I needed some money. I wanted to get me a house and I got to have another operation.

Fogle: Have you ever sold any of your annuity payments before?

Freeman: Never have.

Fogle: Do you understand that you are no longer entitled to the payments that you sold?

Freeman: Correct.

Fogle: Do you also understand that this is a sale of those payments and not a loan?

Freeman: Correct.

5. In June, 1998, the net proceeds of this sale, totaling $87,767.82, were wired to Debtor's attorney who then deducted certain expenses and paid the balance to Debtor. (Wentworth's Ex. 4.)

6. Pursuant to the requirements of the Purchase Agreement, Debtor sent a letter to Life Colony directing it to send future payments under the annuity to a new address. This address was maintained by Wentworth for the purpose of receiving these and other structured settlement payments purchased in the ordinary course of business.

7. Life Colony refused Debtor's request to change the address. Debtor continued to receive annuity payments at his address. However, rather than turning over the periodic payments to Wentworth, Debtor retained possession of these payments.

8. Subsequently, Wentworth notified Debtor that he had breached his obligations to Wentworth under the Purchase Agreement.

9. Accordingly, Wentworth obtained a Confession of Judgment, as authorized by the Purchase Agreement, to get control of the property through the issuance of a Writ of Garnishment. (Debtor's Ex. 2.) The Writ was served on the Life Colony for the purpose of collecting the funds Wentworth claimed it obtained pursuant to the April, 1998, Purchase Agreement.

10. There is disputed testimony regarding what occurred when Debtor learned Wentworth was taking action to get control of the property. Debtor testified that he returned the bulk, but not all, of the sales proceeds by sending cash to Wentworth in a brown envelope mailed from a post office in Waycross, Georgia.[4] Wentworth's representative, however, testified that no cash funds were received from any source in its Pennsylvania office.

11. On October 30, 1998, Debtor filed a Chapter 7 petition with this Court. On his Schedule C, Debtor listed the Life Colony annuity as exempt. (Doc. 1.) Debtor then requested that the Writ of Garnishment be released, but Wentworth took no further action to release the Writ. Consequently, Debtor filed a Motion for Sanctions against Wentworth for violating the automatic stay. (Doc. 7.) A hearing on the motion was held on January 7, 1999. (Doc. 17.) On January 19, 1999, Wentworth filed an Objection to Debtor's Claim of Exemption. (Doc. 19.) A hearing on Wentworth's objection was held on February 25, 1999. (Doc. 35.) On March 29, 1999, the Court denied Debtor's Motion for Sanctions. (Docs. 39–40.)

### CONCLUSIONS OF LAW

The main issue before the Court is whether the annuity payment proceeds are property of Debtor's estate pursuant to 11 U.S.C. § 541.

An estate in bankruptcy consists of all the property interests, legal and equitable, that the debtor possesses as of the date the petition is filed. *See* 11 U.S.C. § 541(a) (1999). However, an individual may exclude property from the estate by claiming exemptions authorized by 11 U.S.C. § 522. *See In re Allen*, 203 B.R. 786, 791 (Bankr.M.D.Fla.1996). States are permitted to opt out of the federal exemp-

4. The Court finds Debtor's testimony incredible.

tions enumerated in § 522(d), and may limit residents to those exemptions provided under state law. 11 U.S.C. § 522(b) (1999). Florida has opted out of the federal scheme, making a debtor's exemptions subject to state law. *See* FLA.STAT.ANN. § 222.20; FLA. CONST. art. X, § 4; *In re Hall,* 752 F.2d 582, 584 (11th Cir.1985); *In re Kelley,* 21 B.R. 375, 376 (Bankr. M.D.Fla.1982).

 A party objecting to an exemption provided under Florida law must prove, by a preponderance of the evidence, that the debtor is not entitled to the claimed exemption. *In re Wilbur,* 206 B.R. 1002, 1006 (Bankr.M.D.Fla.1997) (citing *In re Rightmyer,* 156 B.R. 690, 692 (Bankr.M.D.Fla.1993)). However, no property may be exempted unless it falls within the bankruptcy estate. *See* 11 U.S.C. § 522(b) (1999) (providing that debtor may exempt certain property "from property of the estate"); *see also Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (noting that interest not possessed by estate cannot be exempted). In a previous opinion in this case, in *In re Freeman,* 232 B.R. 497, 503 (Bankr.M.D.Fla.1999), the Court denied Debtor's Motion for Sanctions against Wentworth, and found that "the Purchase Agreement executed by Debtor in April, 1998, constituted an effective legal assignment by Debtor of his right to receive the periodic payments from the annuity." The Court went further and held that "Debtor no longer has a right to receive these payments, and thus, the payment stream is not property of the estate." *Id.*

The Court's decision in *Freeman* appears to render the present objection moot. *See id.* However, the Court will review the evidence in light of the fact that the affirmative burden of proof lay with Debtor on his motion for sanctions, while in the present case, the burden lies with Wentworth on its objection to Debtor's

Claim of Exemption. *See In re 50–Off Stores Inc.,* 220 B.R. 897, 908 (Bankr. W.D.Tx.1998); *Snyder v. Dewoskin, (In re Mahendra),* 131 F.3d 750 (8th Cir.1997); *In re Collins,* 1992 WL 190471 (Bankr. N.D.Ill. July 21, 1992); FED.R.BANKR.P. 9011; 11 U.S.C. § 362 (1999); *In re Wilbur,* 206 B.R. at 1006; FED.R.BANKR.P. 4003(c).

 As the Court has previously noted, contract rights may be assigned unless the assignment is prohibited by statute, contrary to public policy, or forbidden by the terms of the contract.[5] *Freeman,* 232 B.R. at 501 (citations omitted). On Debtor's Motion for Sanctions, the Court in *Freeman* made it clear that the anti-assignment clause must be examined in order to determine if Debtor was contractually precluded from assigning his right to receive the proceeds under the annuity. *Id.* at 501–03 (noting anti-assignment language does not in and of itself prohibit assignment of one's right to receive payments under annuity). However, in *Freeman,* as in the present case, Debtor failed to introduce the clause into evidence. Wentworth, on the other hand, has introduced an unambiguous Purchase Agreement and a transcript of the exit interview, both of which clearly indicate that Debtor intended to sell and did sell all his interest in the annuity payments to Wentworth pre-petition. Therefore, based upon the evidence presented and the Court's previous holding in *Freeman,* 232 B.R. 497, Wentworth has proven, by a preponderance of the evidence, that the annuity payments are not property of Debtor's estate, and thus, cannot be claimed as exempt.

### *CONCLUSION*

Based on the foregoing, Wentworth's Objection to Debtor's Claim of Exemption is well taken, and sustained. The Court will enter a separate order consistent with

---

5. Debtor's only contention is that he was contractually precluded from assigning his right to receive payments under the annuity.

these Findings of Fact and Conclusions of Law.